# IN THE UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF MISSISSIPPI
### NORTHERN DIVISION

**AQUINTA H. PALMER**                                                    **PLAINTIFF**

**VS.**                                      **CIVIL ACTION NO.** 3:22–cv–00508-DPJ-FKB

**JEREMY JEFFERSON,**                                                    **DEFENDANT**
**Individually and in his official capacity**
**as a Jackson Police Officer**

**JANE DOE,**                                                           **DEFENDANT**
**Individually and in her official capacity**
**as a Jackson Police Officer**

**OFFICER DOE DRAIN,**                                                  **DEFENDANT**
**Individually and in his official capacity**
**as a Jackson Police Officer**

**JACKSON POLICE DEPARTMENT**                                           **DEFENDANT**

**JAMES DAVIS,**                                                        **DEFENDANT**
**Individually and in his official capacity**
**as Chief of Jackson Police Department**

**CITY OF JACKSON, MISSISSIPPI**                                        **DEFENDANT**

**HINDS COUNTY, MISSISSIPPI**                                           **DEFENDANT**

**TYREE JONES,**                                                        **DEFENDANT**
**Individually and in his official capacity**
**As Sheriff of Hinds County, Mississippi**

**JOHN/JANE DOES NOS. 1 – 25**                                          **DEFENDANTS**

## COMPLAINT JURY TRIAL REQUESTED

COMES NOW the Plaintiff, Aquinta H. Palmer, by and through her attorneys, and files

this her Complaint against Defendants, Officer Jeremy Jefferson; Officer Jane Doe; Officer Doe

Drain; Chief James Davis; Jackson Police Department (JPD); City of Jackson; Hinds County,

1

Mississippi; Sheriff Tyree Jones; and John/Jane Does #s 1 - 25. In support thereof, Plaintiff would show unto the Honorable Court as follows:

## INTRODUCTION

This case arises from certain events which occurred on July 17, 2021, in Jackson, Hinds County, Mississippi, when the Defendants in their official and individual capacities as employees of the Jackson Police Department and the Hinds County Sheriff's Department, under color of law, intentionally, grossly, without reason, cause, or objective reasonableness, violated Plaintiff's Civil Rights as guaranteed by the United States' Constitution, the State of Mississippi Constitution and Mississippi statutory and common law, proximately causing serious, permanent physical and psychological injuries to the Plaintiff.

## PARTIES

1.      Aquinta H. Palmer, (Plaintiff), is a 33-year-old African American female, a United States citizen, and a resident citizen of Jackson, Hinds County, Mississippi.

2.      Officer Jeremy Jefferson, (Defendant), is an adult African American male believed to be a resident citizen of Jackson, Hinds County, Mississippi. At the time of these events, he was an employee and officer with the Jackson Police Department (JPD), acting under color of law and within the course and scope of his employment with the JPD. Jefferson had no reasonable suspicion of wrongdoing on the part of Plaintiff to even cause the need for an investigative detention. Officer Jefferson substantially exceeded his authority and conspired to violate Plaintiff's constitutional rights and did violate Plaintiff's clearly established constitutional rights of which a reasonable person would have known. Plaintiff is bringing this action against Officer Jefferson in both his individual and official capacities. Officer Jefferson may be served process at his place of employment, the JPD.

3.        Officer Jane Doe, (Defendant), at present, is unidentified but took part in violating Plaintiff's constitutional rights at the aforesaid time and place. She is an adult African American female believed to be a resident citizen of Jackson, Hinds County, Mississippi. At the time of these events, she was an employee and officer with the Jackson Police Department (JPD), acting under color of law and within the course and scope of her employment with the JPD. Officer Jane Doe substantially exceeded her authority and/or failed to exercise her authority and conspired to violate Plaintiff's constitutional rights and did violate Plaintiff's clearly established constitutional rights of which a reasonable person would have known. Plaintiff is bringing this action against Officer Jane Doe in both her individual and official capacities. Officer Jane Doe may be served with process at her place of employment, the JPD. Once her name is procured, it will be substituted.

4.        Officer Doe Drain, (Defendant), is an adult African American male believed to be a resident citizen of Jackson, Hinds County, Mississippi. At the time of these events, he was an employee and officer with the Jackson Police Department (JPD), acting under color of law and within the course and scope of his employment with the JPD. Officer Drain substantially exceeded his authority by unnecessarily tasing the Plaintiff with malice and conspiring to violate Plaintiff's constitutional rights, all in violation of Plaintiff's clearly established constitutional rights of which a reasonable person would have known. Plaintiff is bringing this action against Officer Doe Drain in both his individual and official capacities. Officer Doe Drain, once identified, may be served with process at his place of employment, the JPD. Once his name is procured, it will be substituted.

5.        Chief James Davis, (Defendant), is an adult African American male believed to be a resident citizen of Jackson, Hinds County, Mississippi. At the time of these events, he was an employee with the Jackson Police Department (JPD), holding the position of Chief, acting under color of law and within the course and scope of his employment with JPD. Chief Davis is the chief

law enforcement officer and policymaker for JPD and is responsible for the establishment of the policies, practices, and customs of JPD. Chief James Davis is responsible for setting policies, funding, and supervising county departments, staff, and any entity or individual contracted to perform services in the Hinds County Jail system. Chief Davis substantially exceeded his authority, violating Plaintiff's clearly established constitutional rights of which a reasonable person would have known. Chief Davis had active participation in the unconstitutional conduct by his knowledge or acquiescence thereto. Plaintiff is bringing this action against Chief James Davis in both his individual and official capacities. Chief James Davis may be served with process at his place of employment, JPD.

6.      Jackson Police Department in Hinds County, Mississippi (JPD), (Defendant), is a Mississippi agency qualified to do business in Mississippi with its principal place of business at City Hall, 200 South President Street, Jackson, Mississippi 39205. The Jackson Police Department substantially exceeded its authority violating Plaintiff's clearly established constitutional rights of which a reasonable person would have known and further acquiesced to its officers violating police policies. JPD also had a deliberate indifference to properly training its officers. The Jackson Police Department may be served with process through Chief of Police, James Davis, at 200 South President Street, Jackson, Mississippi, 39205.

7.      The City of Jackson, Mississippi, (Defendant), is a municipality chartered under the laws of the state of Mississippi with its principal place of business at 219 South President Street, Jackson, Mississippi 39205. Defendant City, acting through the Jackson Police Department (JPD), was responsible for the policy, practice, supervision, implementation, and conduct of all JPD matters and was responsible for the appointment, tyrant, supervision, discipline, detention, and conduct of all JPD personnel. All of the constitutional violations of Plaintiff's rights herein

4

were the customs of policies of the City of Jackson and JPD so as to cause and encourage employees to violate Plaintiff's constitutional rights. Furthermore, constitutional violations were so frequent that the course of conduct warrants attribution to the City of Jackson and JPD of knowledge that the unconstitutional conduct was the expected and accepted practices of city employees. Such actions were the moving force behind Plaintiff's constitutional injuries. The City of Jackson, Mississippi may be served with process through Mayor Chokwe Antwar Lumumba.

8.    Hinds County, Mississippi, (Defendant), has its principal place of business at 219 South President Street, Jackson, Mississippi 39205. All of the constitutional violations of Plaintiff's rights herein were the customs or policies of the City of Jackson and/or Hinds County. Furthermore, constitutional violations were so frequent that the course of conduct warrants attribution to Hinds County of knowledge that the objectionable conduct was the expected, accepted practices of Hinds County employees. Hinds County, Mississippi may be served at the Hinds County Board of Supervisors located at 316 South Presidents Street, Jackson, MS, 39201.[1]

9.    Hinds County Sheriff, Tyree Jones, (Defendant), is responsible for setting policies, funding, and supervising county departments, staff, and any entity or individual contracted to perform services in the Hinds County jail system. He was considered the final policy decision maker for Raymond Detention Center (RDC) at the time of the incident described herein. He was aware of the constitutional violations against the Plaintiff and either approved or acquiesced to these. Plaintiff brings this action against Sheriff Jones in both his individual and official capacities. Sheriff Tyree Jones may be served at his place of employment, Jackson Police Department.

10.    John/Jane Does 1 – 25, (Defendants), identities are unknown and presently unidentified. These Defendants were employees of either the Jackson Police Department (JPD),

---

[1] MRCP Rule D(6): [Service may be made upon a county] by delivering a copy of the summons and complaint to the president or clerk of the board of supervisors.

the City of Jackson, or Hinds County, in their individual and official capacities, who either took part in the search, seizure, and detention of the Plaintiff, substantially violating Plaintiff's constitutional rights, were part of a conspiracy against Plaintiff or made and enforced policies creating substantial and unconstitutional acts against the Plaintiff of which any reasonable person would have known. Once their names and/or identities are discovered, they will be properly substituted.

11.   All of the aforementioned Defendants deprived the Plaintiff of her constitutional rights while in the course and scope of their respective government employer acting under color of law, officially violating Plaintiff's protected federal rights and proximately causing her permanent damages, past, present, and future.

12.   The Defendants cannot be shielded by qualified immunity because their conduct was not objectively reasonable and violated clearly established statutory or constitutional rights of the Plaintiff, which a reasonable person would have known, and which were clearly established at the time of the violation.

13.   Plaintiff seeks monetary damages (special, compensatory, and punitive) against the Defendants, as well as an award of costs and attorney's fees, and such other relief as the Court deems just and proper.

## JURISDICTION AND VENUE

14.   Plaintiff brings this suit seeking damages for the deprivation of her civil rights, pursuant to, 42 U.S.C. §1983. This action arises out of events which occurred in this Court's jurisdiction in the First Judicial District of Hinds County, Mississippi, initially beginning at an establishment known as "Vibe" located at the SE corner of Ridgewood Road and County Line Road. Jurisdiction and venue are proper on the grounds of 42 U.S.C. §1983 and pursuant to Title

28 U.S.C. 1331; 28 U.S.C. §1391 (b); 28 U.S.C. §1343; 42 U.S.C. §1988; and 42 U.S.C. §1985. Plaintiff's causes of action arise pursuant to 42 U.S.C. §1983, the First, Fourth, Fifth, Sixth, Eighth, and Fourteenth Amendments to the United States' Constitution, and Mississippi statutory and common law. The amount in controversy exceeds $75,000.00 excluding interests and costs.

15.    Venue is proper in this District pursuant to 28 U.S.C. §1391 (b) because one or more of the Defendants reside in the Southern District of Mississippi, and a substantial part of the relevant events occurred in this Court's venue.

16.    Each of the individual Defendants involved in this incident were employees or agents of the City of Jackson, Mississippi and the Jackson Police Department (JPD) or Hinds County Sheriff's Office, and all of their unconstitutional and torturous acts were performed as state actors under the color and pretense of the constitutions, statues, ordinances, regulations, customs, and usages of the United States of America, the State of Mississippi's Constitution. and Mississippi statutory and/or common law. All said acts were committed under the color law and by the virtue of their official offices and authority as law enforcement officers, employees, and agents of Jackson, Mississippi; Hinds County Sheriff's Office; Hinds County; and JPD.

## **PRELUDE**

17.    On June 23, 2016, the United States of America, joined by the Mississippi Attorney General, filed suit against Hinds County, the Hinds County Board of Supervisors, Victor Mason, and the Hinds County sheriff in his official capacity (Civil Number 3:16-CV-489-WHB-JCG), under 42 U.S.C. §1997, to enjoin the Defendants from depriving Hinds County prisoners of rights, privileges, or immunities secured and protected by the Constitution of The United States (Attached hereto as Exhibit "A"). Quoted in part, the lawsuit reads as follows:[2]

---

[2] Primarily focused on Raymond Detention Center

A.    On June 2, 2014, the United States notified the county and county officials of its intention to investigate conditions in the jail, including specifically whether prisoners were being protected from prisoner-on-prisoner violence and the excessive use-of-force.

B.    On January 20, 2015, the United States notified the county and county officials of its intention to expand its investigation to evaluate whether prisoners were being detained without legal authority as a result of a failure to release prisoners in a timely manner.

C.    The United States provided the results and recommendations of its investigation to the county and county officials. These disclosures included specifically those made in the United States' May 21, 2015, Findings Letter (Attached hereto as Exhibit "B").

D.    Jail prisoners suffer serious harm or risk of serious harm from prisoner-on-prisoner violence and staff member's use-of-force.

E.    On multiple occasions, serious disturbances have resulted in harm to prisoners and staff. These instances include at least three riots which resulted widespread damage to entire housing units, the takeover of jail control rooms, and multiple casualties.

F.    The Hinds County Grand Jury and a county monitoring team have previously issued reports and advised Defendants of serious deficiencies with jail policies, procedures, staffing, supervision practices, physical plant, security equipment, training, housing, classification systems, internal investigations, administrative oversight, prisoner supervision, and discipline[3].

G.    Such deficiencies are longstanding and were in place throughout the course of the United States' investigation.

H.    Defendants have not taken corrective action sufficient to correct the longstanding deficiencies.

_____

3. (See Exhibit "L")

8

I.      ail staffing is poor with insufficient numbers of trained and experienced staff to supervise prisoners, respond to emergencies, and man all critical security posts. The staffing and supervision deficiencies have contributed to variety of serious deficiencies including delays in providing prisoners with exercise, programs, and treatment.

J.      Deficiencies with physical plant and design, as was well inadequate, damaged, or malfunctioning cameras, locks, and other security equipment, have allowed prisoners to obtain dangerous contraband and engage in unsafe or violent behavior without timely staff intervention. Contraband has included large numbers of cell phones, weapons, and illegal drugs.

K.      Defendants have not developed or implemented adequate policies and procedures to oversee and regulate staff use-of-force. Staff members have used electronic control devices (e.g. tasers), corporal punishment, and a canine to injure prisoners without adequate justification.

L.      Defendants have not developed and implemented internal administrative and investigation procedures required to ensure adequate staff and prisoner supervision. For example, the jail does not have sufficient, qualified staff or adequate procedures to conduct thorough and timely internal investigations when serious incidents occur.

M.      Defendants have maintained dangerously low staffing levels with high staff turnover rates, this placing prisoners at serious risk of harm from other prisoners and staff.

N.      Defendants' classification system does not identify or protect potential victims from abuse, and Defendants' housing assignments system does not include sufficient

9

consideration for safety and security concerns. As a result, Defendants disperse vulnerable prisoners among the various housing units, subjecting them to unnecessary risk of harm. Youth prisoners, female prisoners, prisoners with serious mental health conditions, suicidal prisoners, and other prisoners who require heightened supervision, do not receive such supervision.

O.    Defendants have not remedied systematic deficiencies, implemented, maintained, or developed policies and procedures required to integrate the jail into the local criminal justice process and protect prisoners' rights that are associated with the criminal justice process. For instance, inadequate staffing and procedures have resulted in substantial restrictions in attorney visitation, and staff errors have caused some prisoners to remain in the jail when they should have been released.

P.    These factual allegations have been obvious and known to Defendants for a substantial period of time with notice provided by numerous individuals and agencies, including the United States' Department of Justice's National Institute of Corrections, the Hinds County Grand Jury, the County Monitoring Team, jail staff, and county supervisors, yet Defendants have failed to adequately address the conditions described.

Q.    Through the acts and omissions alleged, Defendants have subjected prisoners at the jail to a pattern of practice of conditions of confinement that deprive them of rights, privileges, and immunities secured and protected under the Constitution of the United States, causing such prisoners to suffer grievous harm.

18.    On June 19, 2020[4], after much civil unrest within the Hinds County community, Mayor Lumumba issued an Executive Order for Jackson Police Department's use of force. Within that order was stated: (Attached hereto as Exhibit "C").

---

[4] Thirteen months prior to the incident

A.    Require sworn officers with the Jackson Police Department ("officers") to deescalate situations where possible by communicating with subjects, maintaining distance, and otherwise eliminating the need to use force;

B.    Require officers to intervene and stop excessive force used by other officers and report these incidents immediately to a supervisor;

C.    Develop a Use-of-Force Continuum that limits the types of force that can be used to respond to specific types of resistance;

D.    Require comprehensive reporting where officers have to report each time they use force or threaten to use force.

19.    As will be shown, each of the policies set forth in the mayor's executive order were violated by the Defendants during their "free for all" and out-of-control reckless actions at the scene, so much so as to rise to the level of gross and willful misconduct obliterating Plaintiff's civil rights. The Defendants should be punished in such a way as to deter future miscarriages of justice similar to that visited upon the Plaintiff.

20.    On July 19, 2016, a Consent Decree, agreed to by Hinds County and Sheriff Tyree Jones, was entered requiring Hinds County, acting through its sheriff and the Board of Supervisors, to make changes to its system of incarceration. Hinds County promised to remedy the problems (Attached hereto as Exhibit "D").

21.    In 2019, the Department of Justice filed a Motion for Order to Show Cause, outlining a litany of ongoing constitutional violations at Raymond Detention Center (RDC) which had not been remedied under the Consent Decree (Attached hereto as Exhibit "E").

22.    On January 16, 2020, the Department of Justice entered into a joint Settlement Agreement which was court approved. In its order, this Court noted that more than three years had

passed, and Hinds County had yet to comply with the Consent Decree. Hinds County was given ten months to comply (Attached hereto as Exhibit "F").

23.     On November 23, 2021, Federal District Judge Carleton V. Reeves issued an Order to Show Cause stating that the constitutional conditions at the Raymond Detention Center (RDC) "have not been remedied" causing needless suffering and death and "a destructive effect on human character." Judge Reeves noted that in July of 2013, a grand jury concluded RDC was in "a deplorable condition and inadequately staffed." Judge Reeves ordered that within 21 days, Hinds County shall show cause and explain why it should not be held in civil contempt (Attached hereto as Exhibit "G").

24.     On February 4, 2022, a "First Order of Contempt" was entered by Federal District Judge Carleton v. Reeves finding contempt and noting that the United States Department of Justice's Civil Rights Division concluded that Hinds County had violated the Eighth and Fourteenth Amendments by holding inmates in Raymond Detention Center (RDC) (Attached hereto as Exhibit "H").

25.     On March 23, 2022, this Court entered its "Second Order of Contempt" against Hinds County and Sheriff Tyree Jones finding that they had complied with only three of the requirements under the consent agreement. The Court noted, "It is well-established that violence is pervasive at Raymond Detention Center... Violence is an ongoing problem." It was found by the Court that assault figures breakdowns were "about 20 [assaults] per month, one of them from an assault that resulted in the inmate being beaten to death." (Attached hereto as Exhibit "I").

26.     There has clearly been adjudicated that placing as prisoner in the Raymond Detention Center (RDC) is per se unconstitutional.

## GENERAL FACTS

27.    On July 17, 2021, the Plaintiff, a 33-year-old African American female and mother of one child, accompanied by several of her acquaintances that she knows through the Hinds County Head-Start Program, were visiting a local establishment known as "Vibe". The Plaintiff had just been awarded "Parent of the Year" by Dawson Elementary School, and she was celebrating with the aforementioned acquaintances. When the Plaintiff exited the premises to return home to her daughter, she noticed numerous JPD officers and their vehicles in the parking lot of the establishment. Plaintiff saw that one of her friends was in handcuffs, and JPD Officer Jeremy Jefferson was positioning himself to strike her. While keeping her distance in a respectful manner, Plaintiff pled with Officer Jefferson not to strike her friend since she was already handcuffed, and that it was her friend's birthday.

28.    Officer Jefferson then placed Plaintiff's friend in his patrol car, turned, walked toward the Plaintiff, and, without warning or negotiation, pushed, shoved, and hit Plaintiff in her chest with both of his hands so violently that Plaintiff's entire body was literally knocked out of her shoes. While screaming for Plaintiff to "have a good night," Officer Jefferson violently pushed Plaintiff a second time while waving his lethal baton towards Plaintiff. Plaintiff responded by placing her hands to her side and asking Officer Jefferson not to push her. Officer Jefferson then got very close to Plaintiff and screamed as loudly as one could at Plaintiff, "Get out of here!" Plaintiff told Officer Jefferson she would leave, and that she wanted to leave, but she needed to retrieve her shoes which were on the ground in the parking lot. Officer Jefferson then, without cause or jurisdiction, violently pushed Plaintiff in the chest for a third time.

29.    Prior to, and during the altercation, Plaintiff was not engaged in any activity that gave Defendant Jefferson reason to believe she was in violation of any law. Plaintiff did not exhibit

13

any threatening conduct or aggressive behavior towards Defendant Jefferson or any other officer or person in the vicinity. Plaintiff was not engaged in any criminal activity. Nevertheless, Defendant Jefferson willfully, wantonly, and with deliberate indifference "seized," assaulted, intimidated, and detained Plaintiff without any probable cause whatsoever, all while acting under color of law.

30.    All of the aforesaid caused Plaintiff severe injuries including pain, immeasurable fear, extreme embarrassment, and permanent physical and psychological ramifications.

31.    During this commotion, Officer Jane Doe, who had observed Officer Jefferson's actions, stepped up and told Jefferson to allow her to handle the matter[5]. Plaintiff explained to Defendant Jane Doe that she just wanted to get her shoes and leave and told Officer Jane Doe that she had done nothing wrong. As Plaintiff went to retrieve her shoes, she heard Officer Jefferson say to another JPD officer, "She going to jail."

32.    Plaintiff then saw Officer Jefferson coming towards her with handcuffs, and afraid of being attacked again, she hid behind Officer Jane Doe pleading she had done nothing wrong. Then Officer Jefferson, for no legitimate reason, severely grabbed Plaintiff, slammed her onto the hood of Plaintiff's car, and violently attempted to place handcuffs on the Plaintiff by placing all of his weight (250 pounds) atop Plaintiff. Plaintiff tried to resist being unjustifiably handcuffed, yet Officer Jefferson continued to wrestle Plaintiff on the vehicle hood. During this, Officer Jefferson verbally threatened Plaintiff by stating, "I wish you would. I wish you would." At this point the aforesaid Officer Jane Doe was screaming at Officer Jefferson, "I got it! I got it! I got it!" However, Officer Jefferson ignored her commands. Thereafter, Plaintiff remained handcuffed for more than eight hours.

---

[5] Plaintiff's belief is that Officer Jane Doe was Officer Jefferson's superior.

14

33.    As the Defendant Officer Jane Doe was attempting to help Plaintiff from the hood of the vehicle, Defendant Officer Doe Drain suddenly, and for no legitimate reason, tased the Plaintiff causing Plaintiff to fall to the ground. Then, while Plaintiff was handcuffed on the ground completely incapacitated with three officers on top of her, Officer Doe Drain tased Plaintiff two additional times. This resulted in Plaintiff urinating on herself and suffering severe injuries.

34.    Contrary to common sense, in deliberate indifference to abuse, and in an effort to inflict duress and coercion upon the Plaintiff, Officer Jefferson intentionally, willfully, wantonly, with utter indifference to, and in conscious disregard for Plaintiff's safety, pursued an egregious course of conduct by violently striking Plaintiff three times, slamming her into a vehicle, screaming in her face, handcuffing her in a violent, ruthless, and careless manner, and ordering Officer Doe Drain to tase Plaintiff three times, twice while the Plaintiff was incapacitated on the ground. This was all done under circumstances that no reasonable person could conclude to be sufficient probable cause to arrest Plaintiff. Therefore, both the arrest and the excessive force used were unlawful. All of the aforesaid proximately caused Plaintiff severe injuries, immeasurable fear, extreme embarrassment, and permanent physical and psychological ramifications.

35.    Not having probable cause, Officer Jefferson and Officer Drain willfully and wantonly carried out their illegal conduct of wrongfully detaining Plaintiff, inflicting physical and emotional distress, and coercion by exhibiting unconscionable excessive force, all of such action being a proximate cause of Plaintiff's injuries and damages.

36.    Officer Jefferson enjoyed a reputation for abusing detainees, especially women, which was known by his supervisors. Plaintiff's encounter with Officer Jefferson was not consensual. Instead, Plaintiff was detained, seized, abused by excessive force, man-handled, falsely detained, and unlawfully arrested without probable cause in violation of Plaintiff's rights

15

secured by the Fourth, Eighth, and Fourteenth Amendments to the United States' Constitution. Plaintiff was acting in a lawful manner at all relevant times. She was in no way a proximate cause, efficient-proximate-cause, and/or contributing cause of these Defendants' conduct.

37.    As a direct and proximate result of the reckless, willful, and wanton conduct, which was in utter indifference and in conscious disregard for the Plaintiff's safety, and in deprivation of Plaintiff's constitutional rights by the Defendants and all JPD present, this violent, catastrophic, and unconstitutional event occurred proximately resulting in Plaintiff sustaining severe, permanent, personal, physical, and emotional injuries and damages.

38.    Defendants, Officer Jefferson, Officer Jane Doe, Officer Drain, and John/Jane Does 1-25, unreasonably seized and detained Plaintiff's person and deprived Plaintiff of her liberty by unlawfully arresting her by use of brutally excessive force, without due process of law, in violation of Plaintiff's Fourth, Fifth, Eighth, and Fourteenth Amendments to the United States' Constitution.

39.    All of the Defendants' use of force was objectively unreasonable under the Fourth Amendment amounting to deliberate indifference and excessive force and injuries to the Plaintiff resulting directly from the use of excessive force which was clearly unreasonable. The applicable law was sufficiently clear that every reasonable official would understand that what he was doing was unlawful.

40.    In violation of Plaintiff's constitutional rights, intentionally and with reckless disregard for the truth, Defendants Officer Jefferson, Officer Jane Doe, Officer Doe Drain, and Officers John/Jane Does 1-25, had no probable cause or articulable suspicion to justify the seizure, detention, and custodial restraint of Plaintiff. There was no rational or justifiable reasonable or basis for the Plaintiff to be seized, beaten, handcuffed for eight hours, tased three times, or detained. Defendants had no evidence to suspect that a crime was afoot, or that Plaintiff was

16

engaged in any criminal activity, or that Plaintiff posed any threat to flee, would resist any lawful arrest, or posed any threat to Defendants or anyone else. The totality of circumstances within the Defendants' knowledge were not sufficient for a reasonable officer to conclude that Plaintiff had committed or was about to commit any offense.

41.    Defendants JPD, Chief James Davis, Officer Jefferson, Officer Jane Doe, Officer Doe Drain, and Officers John/Jane Does 1-25, were the moving forces for each and every one of the above referenced and cited acts consistent with the inadequate policies, training, supervision, customs, patterns, practices, and tolerances promoted and acquiescence by acts of omission and commission as ratified and approved by Defendant Chief Davis, JPD, and the City of Jackson, Mississippi.

42.    All actions and interactions alleged against Defendants, Officer Jefferson, Officer Jane Doe, Officer Doe Drain, Chief Davis, John/Jane Does 1-25, JPD, and City of Jackson, Mississippi, herein were in fact the cause and proximate cause of the foreseeable harm and subsequent injuries and damages sustained by Plaintiff. As a direct, proximate result of these Defendants' actions and omissions, Plaintiff's rights under the Fourth, Fifth, Sixth, Eighth, and Fourteenth Amendments of the United States' Constitution were violated.

43.    During the confrontation, Plaintiff pleaded with Officer Jefferson, Officer Jane Doe, and Officer Doe Drain that she had done nothing wrong, and that she had lost control of her bladder. Plaintiff cried for mercy. Officer Jefferson stated to his fellow officers, "She has to go to jail because I pushed her first." Once Officer Jefferson placed the handcuffs on Plaintiff, he pulled his "blackjack" and began waving it in the air. He began to taunt Plaintiff stating among other things, "Where all the tough talk now?" Officer Jefferson's conspiratorial remarks to his fellow

17

officers was a clear sign that they should jointly assist him in finding a way to unlawfully arrest and charge Plaintiff, placing Plaintiff in a jail with deplorable conditions.

44.    Eventually, Officer Jane Doe took Plaintiff to booking in downtown Jackson, Mississippi, where photographs and fingerprints were taken of Plaintiff. Plaintiff asked Officer Jane Doe with what she was being charged. However, Officer Jane Doe stated, "I do not know." When Officer Jefferson came to booking, Plaintiff asked him what she was being charged with, and he would not respond. During the above-mentioned events, Plaintiff was never told she was being charged or under arrest and never given her Miranda Rights.

45.    Since the Plaintiff had been visibly physically injured (left foot swelling, blood from hand and right foot, pain in chest, handcuffed and taser injuries), Officer Jefferson took Plaintiff to a local emergency room for treatment. After being released from the hospital, Officer Jefferson took Plaintiff to the RDC and immediately left without giving jail personnel any instructions. Officer Jefferson never told Plaintiff why she was being arrested or what crime she was being charged with, and he never overtly discussed with representatives of the RDC why the Plaintiff was there or what to do with her. Officer Jefferson simply left Plaintiff where she remained in jail for three days, during which time she was mug shot, fingerprinted, booked, and given an extensive, invasive cavity search. Plaintiff saw people at the jail whom she knew, causing her great embarrassment and permanent damage to her reputation. The female holding cell was visible from the male holding cells, and Plaintiff was subjected to threatening, sexual, verbal abuse from the male detainees. Plaintiff was also subjected to sexual advances by the women in the holding cell with her which was very scary for Plaintiff.

46.    On January 11, 2022, Plaintiff's counsel submitted a Freedom of Information Act (FOIA) requested to the Jackson Police Department, the City of Jackson Mayor's office, and the

Hinds County Penal Farm for any and all records related to Plaintiff's unlawful detention and arrest. Each of the above entities objected to Plaintiff's request and refused to provide the Plaintiff with any of the sought-after information[6]. Prior to filing requests under the FOIA, Plaintiff's representatives were told by JPD that no official reports had been generated. However, thereafter, Plaintiff received a one-page document entitled "Uniform Incident Report," ostensibly written by Officer Jeremy Jefferson. This document was neither signed not dated (Attached hereto as Exhibit "J").

47.    At trial, the charges against Plaintiff were all demised (Attached hereto as Exhibit "K").

### CAUSES OF ACTIONS

### COUNT 1
(42 U.S.C. §1983)
FIRST AND FOURTEENTH AMENDMENTS
RETALIATORY DETENTION AND ARREST
OFFICER JEREMY JEFFERSON, OFFICER JANE DOE,
OFICER JOHN DRAIN, & DOES 1 – 25

48.    Plaintiff reasserts and incorporates by reference all allegations set forth above above pursuant to the Federal Rules of Civil Procedure, Rule 10(c).

49.    At all times the Plaintiff was engaged in activity protected by the First Amendment as Incorporated by the Fourteenth Amendment. The First Amendment provides that "Congress shall make no law…abridging the Freedom of Speech…"

50.    When Plaintiff observed her friend being arrested, she plead with Officer Jefferson not to make the arrest. This was done by exercising her constitutional right to ask questions of public officials. Yet, as shown within this Complaint, Officer Jefferson and the other Defendants at the scene forcefully detained, beat, tased, handcuffed, and jailed Plaintiff

---

[6] Plaintiff has appealed this decision.

19

without probable cause. In the exercise of her free speech which was constitutionally protected, the officers, acting under color of law, took adverse, retaliatory action that proximately caused Plaintiff to suffer injuries. This right was clearly established at the time.

51.    As a general matter the First Amendment prohibits government officials from subjecting an individual to retaliatory actions for engaging in free speech. The adverse actions taken by the officers at the scene was objectively a material violation of Plaintiff's constitutional rights. The Plaintiff only engaged in speech and conduct high in the hierarchy of First Amendment values. Yet, Plaintiff was detained and physically abused in the complete absence of probable cause. Also, each Defendant at the scene shared in the general conspiratorial objective with their overt acts committed in furtherance of the conspiracy. Plaintiff was engaged in a protected activity. The conspirators took a material adverse action and the retaliatory animus resulted in the false arrest without probable cause. The protected activity was simply not a legitimate consideration for the detention, excessive use of force, the retaliatory arrest and detention for three days.  Plaintiff's exercise of free speech was curtailed.

52.    The officers at the scene/conspirators violated the Plaintiff's clearly established rights. If the First Amendment clearly establishes anything, it is that the government cannot arrest a citizen for her freedom of speech.

53.    The conspirators/officers at the scene took a material adverse action against the Plaintiff. Retaliation by the government officials for exercising one's right to free speech violates the First Amendment. The First Amendment prohibits government officials from subjecting an individual to retaliatory actions from engaging in protected speech.  The Defendants' adverse actions were substantially motivated against Plaintiff's exercise of a constitutionally protected conduct.

54.    The Defendants' actions against the Plaintiff were under color of law while employed by the Jackson Police Department and were the proximate cause of Plaintiff's severe physical and emotional injuries which would chill a person of ordinary firmness from continually engaging in Plaintiff's activity.

**COUNT** II
(42 U.S.C. § 1983)
UNLAWFUL SEARCH AND SEIZURE, UNLAWFULARREST WITHOUT
PROBABLE CAUSE OR DUE PROCESS OF LAW, & CRUEL AND
UNUSUAL PUNISHMENT IN VIOLATION OF FOURTH, FIFTH, EIGHTH, &
FOURTEENTH AMENDMENTS TO THE UNITED STATES CONSTITUTION
DEFENDANTS: CHIEF DAVIS, OFFICER JEREMY JEFFERSON, OFICER
JANE DOE, OFFICER DOE DRAIN, & JOHN/JANE DOES 1 – 25

55.    Plaintiff reasserts and incorporates by reference all allegations set forth above pursuant to the Federal Rules of Civil Procedure, Rule 10(c).

56.    Defendants' actions against the Plaintiff were so outrageous as to shock the conscious of all individuals protected by the United States' Constitution, including the Fourth Amendment, by the treatment and unreasonable seizure and vicious beating of the Plaintiff, displaying a complete, deliberate indifference and disregard to the risk of an unjustified deprivation of the Plaintiff's liberty. All of the Defendants' actions were objectively unreasonable and motivated by ill motive and intent and were all committed under color of law with deliberate indifference to Plaintiff's rights.

57.    The Fourth Amendment dictates legitimate boundaries to secure against unreasonable seizure. Police are commissioned under oath to protect and serve, not harm. The authority given to them is dangerous when under color of law. Plaintiff was unlawfully seized and detained without probable cause and was not in the moment of criminal activity or about to be. Plaintiff was simply a citizen who asked Defendant, Officer Jefferson, a simple question, causing a retaliatory, reckless, and illegally abusive response of viciously striking Plaintiff three times

21

while Plaintiff was on the ground soaking in her own urine exhibiting no resistance. Plaintiff submitted to Defendants' authority even in the threatening presence of several officers. Officer Jefferson and Officer Drain used extremely excessive force which, under the circumstance, was not objectively reasonable and was a shock to the conscience of reasonable individuals. Their actions were not those of reasonable officers. The force Office Jefferson applied was not in good faith and was not by any means a legitimate effort to maintain or restore discipline but was maliciously and sadistically engaged for the purpose of causing harm and intimidation. Defendants' use of force was not objectively reasonable. Furthermore, the relationship between need and the amount of force used by the Defendants was extremely disproportionate to any perceived threat posed by the Plaintiff, all proximately causing Plaintiff to sustain severe, permanent physical and emotional damages and injuries. Defendants' conduct was undertaken recklessly, intentionally, willfully, unreasonably, carelessly, with malice and deliberate indifference to the rights of the Plaintiff. These rights were so clearly established that a reasonable officer would have known the conduct was a violation of Plaintiff's constitutional rights.

58.    Defendants' malicious actions against the Plaintiff consisted of physically intrusive government conduct restraining the liberty of a citizen. The Defendants' intentional actions showed a deliberate indifference to Plaintiff's constitutionally protected rights clearly established statutory and constitutional norms of which a reasonable person would have known.

59.    The Plaintiff was not committing a crime and did not pose an immediate threat, and the Plaintiff did not resist arrest or attempt to evade arrest by flight. Prior to and during this unconstitutional fiasco, Plaintiff never tried to flee or resist arrest. She was not a threat to Officer Jefferson or third persons, and she was not armed. Officer Jefferson had no reasonable amount of suspicion of wrongdoing to justify an investigative detention or probable cause for arrest. Plaintiff

submitted to an assertion of authority. She told Defendant Officer Jefferson that all she wanted to do was get her shoes and leave, yet Office Jefferson would not permit Plaintiff to leave but rather subjected the Plaintiff to constitutional deprivations. The objective, reckless disregard for Plaintiff's constitutional rights infers malice by Defendants Officers Jefferson, Doe, and Drain. Plaintiff sustained the conduct of the police abuse in its purest form meant to be protected against through 42 U.S.C. §1983. All of the above was the proximate cause of Plaintiff's injuries and damages. Plaintiff has been forced to seek treatment for her mental injuries. Plaintiff has suffered, and in all likelihood will continue to suffer anxiety, loss of sleep, depression, sadness, and fear in the future. Plaintiff's neurological injuries have limited Plaintiff's ability to function and enjoy life. The actions of the Defendants' have caused a serious mental shock to Plaintiff causing continuing and deep fear, depression, and mental anguish since the event.

60.    Defendants' actions against the Plaintiff were under color of law while employed by the Jackson Police Department.

### COUNT III
(42 U.S.C. §1983)
FALSE ARREST/FALSE IMPRISONMENT
IN VIOLATION OF PLAINTIFF'S RIGHTS SECURED BY THE FOURTH, FIFTH,
& FOURTEENTH AMENDMENTS TO THE UNITED STATES CONSTITUTION
DEFENDANTS: CHIEF DAVIS, OFFICER JEREMY JEFFERSON,
OFFICER DOE DRAIN, & JOHN/JANE DOES 1 – 25

61.    Plaintiff reasserts and incorporates by reference all allegations set forth above pursuant to the Federal Rules of Civil Procedure, Rule 10(c).

62.    Each Defendant caused the Plaintiff to be arrested falsely, unlawfully, and maliciously without probable cause.

63.    Defendants intended to and did seize and detain the Plaintiff without probable cause that Plaintiff had committed or was about to commit a crime. The detention, arrest and

imprisonment were unlawful and objectively unreasonable violating Plaintiff's constitutionally protected rights.

64.    Defendants acted under color of law when they arrested/detained/imprisoned Plaintiff without probable cause.

65.    Plaintiff was unreasonably handcuffed for eight hours and detained in jail for three days due to the actions of the Defendants under color of law.

66.    Defendants' actions violated the constitutional rights of the Plaintiff to be free from unlawful arrest/detention and imprisonment granted by the Fourth Amendment of the United States' Constitution, proximately causing permanent, severe physical and emotional injuries to the Plaintiff and harming her reputation as a law-abiding citizen.

**COUNT IV**
(42 U.S.C. §1983)
UNLAWFUL DETENTION IN VIOLATION OF PLAINTIFF'S RIGHTS SECURED
BY THE FOURTH, FIFTH, EIGHTH, & FOURTEENTH AMENDMENTS TO THE
UNITED STATES CONSTITUTION
DEFENDANTS: CHIEF DAVIS, OFFICER JEREMY JEFFERSON, OFFICERS
OFFICER JANE DOE, OFFICER DOE DRAIN, JOHN/JANE DOES 1 – 25,
SHERIFF TYREE JONES, & HINDS COUNTY, MISSISSIPPI, CHIEF JAMES
DAVIS, JACKSON POLICE PARTMENT

67.    Plaintiff reasserts and incorporates by reference all allegations set forth above pursuant to the Federal Rules of Civil Procedure, Rule 10(c).

68.    Defendants unlawfully and unreasonably detained the Plaintiff without good faith or probable cause.

69.    Defendant, Officer Jefferson's, decision to place the Plaintiff in a dangerous environment by aggressively threatening the Plaintiff and failing to remove the Plaintiff from a hostile and dangerous environment, constituted an unlawful detention and seizure under the Fourth Amendment of the United States' Constitution.

70.     Defendants acted under color of law when they unlawfully detained/arrested the Plaintiff.

71.     Defendants detained Plaintiff for the purpose of intimidation with unwarranted extremism which violated Plaintiff's constitutional rights.

72.     Defendants unreasonably seized and detained Plaintiff and deprived the Plaintiff o her liberty without due process of law in violation of her Fourth Amendment rights to be secure in her person from unreasonable search and seizure without cruel and unusual punishment inflicted.

73.     Defendants used more force than was reasonably necessary to make an arrest and said force was not proportional to any threat posed by the Plaintiff.

74.     Hinds County and Sheriff Jones knew that it had been adjudicated that RDC was deplorable and was a destructive effect on human character. These Defendants were a part of a conspiratorial plan to assist JPD and its officers in violating Plaintiff's civil rights. This agreement and Plaintiff's three-day confinement were hidden with no reports generated.

75.     Defendants were the moving force for each and every one of the above-referenced and cited acts consistent with the inadequate policies, training, supervision, customs, patterns, practices, tolerances, promoting, and acquiescing by acts of omission and commission as ratified and approved by the JPD and Chief James Davis.

76.     The actions of Defendants described herein violated the rights of the Plaintiff to be free from unlawful detention guaranteed by the Fourth Amendment of the United States' Constitution and proximately caused permanent, severe physical and emotional injuries to the Plaintiff and harm to her reputation as a law-abiding citizen.

**COUNT V**
(42 U.S.C. §1983)
EXCESSIVE FORCE, UNREASONABLE SEARCH AND SEIZURE,
& CRUEL AND UNUSUAL PUNISHMENT
IN VIOLATION OF PLAINTIFF'S RIGHTS SECURED BY THE FOURTH, FIFTH,
EIGHTH, & FOURTEENTH AMENDMENTS TO THE UNITED STATES
CONSTITUTION
DEFENDANTS: OFFICER JEREMY JEFFERSON, OFFICER DOE DRAIN, OFFICER
JANE DOE,
OFFICERS JOHN/JANE DOES 1 – 25, SHERIFF TYREE JONES, & HINDS
COUNTY, MISSISSIPPI

77.     Plaintiff reasserts and incorporates by reference all allegations set forth above

pursuant to Federal Rules of Civil Procedure, Rule 10(c).

78.     The Fourth Amendment guarantees citizens the right to be secure in their persons

from unreasonable seizures and from use of excessive force.

79.     Defendants acted without objective reasonableness, and their willful, wanton

conduct was in utter indifference to and with conscious disregard for Plaintiff's safety subjecting

the Plaintiff to excessive force in violation of Plaintiff's constitutional rights which were clearly

established at the time of the violation. The excessive use of force by the Defendants was

objectively unreasonable and disproportionate to any action by the Plaintiff and violated clearly

establish constitutional rights of which a reasonable person would have known. Defendants used

more force than necessary to detain the Plaintiff, did not act in good faith, and abused the Plaintiff

with cruel and unusual punishment by initiating, beating, threatening, belittling, handcuffing, and

tasing Plaintiff while on the ground soaking in her own urine. Defendants' actions were not

measured and they were ascending without first attempting to negotiate. Violently striking Plaintiff

three times and tasing the Plaintiff three times, under the circumstances, were objectively

unreasonable, and the excessive force continued after Plaintiff was on the ground. As a result, Plaintiff was injured from the clearly excessive force proximately causing her injuries. All said actions of the Defendants were done under color of law.

80.     Plaintiff posed no immediate threat to the Defendants or bystanders. Plaintiff did not unreasonably resist arrest or attempt to flee the scene.

81.     Once Plaintiff was dropped off at the Raymond Detention Center, Plaintiff was held without charge and was unnecessarily subjected to a strip search of her private parts which was invasive, demeaning, dehumanizing, undignified, humiliating, terrifying, embarrassing, and repulsive. At this time, Plaintiff had not been told of any charge against her. JPD officers at "Vibe" already knew that the Plaintiff was without weapons or contraband. The Defendants knew that there was substantial evidence that Plaintiff was no threat. They knew Officer Jefferson's reputation, and they knew, or had reason to know, a conspiracy was in place, and the clear purpose for the strip search was to punish, humiliate, and intimidate Plaintiff. Officer Jefferson announced that Plaintiff had to go to jail because he had pushed the Plaintiff, and once detained, Officer Jefferson said, "...Where is all that talk now?" Instead of being confined elsewhere, he took Plaintiff to the Raymond Detention Center, a virtual hell hole under investigation by the Federal Government, where she was placed in general population. Defendants who were a part of the conspiracy knew Plaintiff would be strip searched at the RDC, and this joint plan was for the sole purpose of punishing and intimidating the Plaintiff in hopes that the Plaintiff would forego confronting the Defendants and their principals. Strip searches violate a person's constitutional rights given by the Fourth, Eighth, and Fourteenth Amendments. This inappropriate and unnecessary action by the Defendants was used as a form of punishment and control. It is one's total inability to control access to the most intimate parts of one's body. In this case, Defendants

lacked probable cause that Plaintiff had hidden contraband on her person. The strip search on

Plaintiff was conducted without any suspicion or indication of need as a means of humiliating or

cowing the Plaintiff. All said actions on the part of the Defendants were in reckless disregard for

the constitutionally protected civil rights of the Plaintiff.

<u>**COUNT VI**</u>
(42 U.S.C. §1983)
DUE PROCESS AND EQUAL PROTECTION
IN VIOLATION OF PLAINTIFF'S RIGHTS SECURED BY THE FOURTH, FIFTH,
EIGHTH, & FOURTEENTH AMENDMENTS TO THE UNITED STATES
CONSTITUTION
DEFENDANTS: CHIEF JAMES DAVIS, OFFICER JEREMY JEFFERSON,
OFFICER DOE DRAIN AND OFFICERS JOHN/JANE DOES 1  25

82.    Plaintiff reasserts and incorporates by reference all allegations set forth above

pursuant to Federal Rules of Civil Procedure, Rule 10(c).

83.    No reasonable officer could have concluded that Plaintiff posed an immediate threat

to Officer Jefferson or others. Plaintiff was not suspected of committing a crime. Defendants could

see Plaintiff's hands and knew she did not have a weapon. There was never any need for the

application of force. The amount of force used was grossly excessive. Plaintiff was injured by the

officers' amount of force used, and the amount of force used was not applied in good faith but

maliciously and sadistically used for the very purpose of causing harm.

84.    Defendants, Officer Jefferson and Officer Drain, acted willfully, wantonly, in utter

indifference to, in conscious disregard for Plaintiff's safety, and in violation of her constitutional

rights protected and guaranteed by the Fourteenth Amendment, including the right not to be

deprived of life and liberty and property without due process of law and equal protection of the

laws. The Plaintiff received treatment by the Defendants different from that received by similarly

situated individuals, and this unequal treatment violated Plaintiff's due process of law and her

equal protection of the laws. The actions of Officer Jefferson and Officer Drain toward Plaintiff

were arbitrary and conscious shocking in a constitutional sense and in violation of Plaintiff's Fourteenth Amendment rights.

85.    Tasing the Plaintiff three times was objectively unreasonable where the Plaintiff did not attempt to strike these Defendants, was not holding a weapon, and was not attempting to flee. Plaintiff only wanted to retrieve her shoes and leave, yet the Defendants actually increased the force as any perceived personal threat by Plaintiff decreased.

86.    Plaintiff was not allowed to leave the premises and was told by Officer Jefferson that she could leave if she would get her shoes, yet Officer Jefferson continued to beat and sadistically harm the Plaintiff against the Plaintiff's constitutional rights and privileges and overtly deprived Plaintiff of her life, liberty, and property without due process of law or equal protection of the law. Existing precedent placed in the constitution goes beyond debate, giving reasonable warning that the conduct at issue violated constitutional rights.

87.    Procedurally, the Plaintiff was deprived of life, liberty, or property and was not given notice of an opportunity to be heard at a meaningful time and a meaningful manner.

88.    All of said violations proximately caused severe permanent physical and emotional damages to Plaintiff.

## COUNT VII
(42 U.S.C. §1983)
MUNICIPAL LIABILITY, FAILURE TO TRAIN, CONSPIRACY TO INTERFEREWITH CIVIL RIGHTS, & CRUEL AND UNUSUAL PUNISHMENT IN VIOLATION OF PLAINTIFF'S RIGHTS SECURED BY THE FOURTH, FIFTH,EIGHTH, & FOURTEENTH AMENDMENTS TO THE UNITED STATES CONSTITUTION DEFENDANTS: CITY OF JACKSON, JACKSON POLICE DEPARTMENT, CHIEF DAVIS, OFFICER JEREMY JEFFERSON, OFFICER DOE DRAIN, OFFICER JANE DOE, & OFFICERS JOHN/JANE DOES 1 – 25

89.    Plaintiff reasserts and incorporates by reference all allegations set forth above pursuant to Federal Rules of Civil Procedure, Rule 10(c).

90.     Defendants' conduct violated the decencies of civilized conduct and was so brutal and offensive to not comport with traditional ideas of fair play and decency. Defendants' conduct was so outrageous and egregious as to shock the conscience of the United States and its citizens.

91.     Officer Jefferson and Officer Drain cannot justify their use of brutal force and could not have reasonably or objectively believed in good faith that their excessive use of force was warranted and/or necessary. Plaintiff relies upon the facts set forth in this Complaint and the customs, practices, and patterns of the Jackson Police Department, its officers, and the City of Jackson, Mississippi in failing to enforce its own policies. Plaintiff would assert that Chief Davis and the City of Jackson, Mississippi have altogether failed to cultivate a culture of excellence within the JPD and have tolerated and ratified the actions of its officers for far too long and was through its intentional actions at worst or apathy at best. These Defendants have fostered the unconstitutional expectations of their officers that it is acceptable to violate the constitutional rights of persons residing in this city, such as the Plaintiff.

92.     The City of Jackson, Mississippi and the JPD do not properly investigate police seizures, use of force on persons, or properly discipline officers for their wrongful acts. The City of Jackson, Mississippi and its relevant policymakers have failed to act to remedy the patterns of abuse described in the preceding paragraphs despite actual knowledge of same, thereby tactically approving and ratifying the type of misconduct alleged herein.

93.     Municipal policymakers are aware of, condone, and facilitate, by their action, a "code of silence" in the Jackson Police Department by which officers fail to report misconduct committed by other officers such as the misconduct in this case.

94.     The customs and practices of Chief Davis, the Jackson Police Department and the City of Jackson in failing to enforce policies, failing to properly investigate officer misconduct,

30

failing and refusing to punish officer misconduct, and fostering a "code of silence" are so persistent and widespread as to practically have the force of law.

95.     The policy, practice, and custom of the officers' "code of silence" results in police officers refusing to report instances of police misconduct of which they are aware, despite their obligation under Executive Order to do so. This conduct includes police officers who remain silent or give false or misleading information during official investigations in order to protect themselves or fellow officers from internal discipline, retaliations, civil liability, or criminal prosecution. Plaintiff has good reason to believe she was visited by this "code of silence". These said actions occurred at the direction of each of the Defendants and facilitated, approved, condoned, or turned a blind eye toward it.

96.     As a matter of both policy and practice, Chief Davis, JPD, and the City of Jackson, Mississippi directly encouraged and permitted this unconstitutional activity by its policies, customs, and practices and are thereby the moving force behind the very type of misconduct at issue here. Defendants failed to adequately train and/or retrain, supervise, and control officers such that their failures manifest deliberate indifference. The injuries of Plaintiff could have been avoided had these defendants provided better or more training as to the proper detention and use of force. This lack of adequate training amounts to unconstitutional policies[7].

97.     The City of Jackson, Mississippi and Chief James Davis should have been or were on notice of each and every constitutional violation taken place herein by the JPD officers and Officer Jefferson.

---

[7] None of the mayor's use-of-force policies in his Executive Order of June 19, 2020 were followed.

98.     As a direct and proximate result of the actions and omissions of the Defendants, Plaintiff suffered serious physical and mental injuries, and her rights under the Fourth and Fourteenth Amendments of the United States' Constitution were violated.

99.     Plaintiff avers that the City of Jackson, Mississippi and Chief Davis are liable for the actions of all officer Defendants by permitting, encouraging, tolerating, and ratifying an official pattern, custom, and practice by its law enforcement, violating the Federal Constitutional Rights of the public at large during the course of their law enforcement applications. The actions of the Defendant officers, as alleged above, were done pursuant to one or more policies, practices (written or unwritten), and/or customs of the City of Jackson, Mississippi, and JPD including, but not limited to, common police practice and customs regarding use of force and were in direct violation of the written polices of JPD. As the City of Jackson, Mississippi and Chief Davis obviously determined that the conduct of Officer Jefferson and other Defendant officers as set forth herein was in compliance with the policies, practices, and customs of the City of Jackson, Mississippi, JPD, and Chief Davis are directly liable for the actions and constitutional violations of all of the Defendants. It is believed that an after-the-fact report of this event was created and body cameras were used, yet now representatives of the Defendants are refusing to comply with the FOIA, and, upon information and belief, Officer Jefferson was not disciplined, reprimanded, or terminated. Accordingly, the City of Jackson, Mississippi, Jackson Police Department and Chief Davis ratified, condoned, acquiesced in, or approved, the conduct of Officer Jefferson and his co-officers in all respects. The City of Jackson, Mississippi and Chief Davis obviously determined that the conduct of Officer Jefferson, as set forth herein, was in compliance with the policies, practices, and customs of the City of Jackson, Mississippi, JPD, the City of Jackson, Mississippi, and Chief

Davis and are directly liable for the actions and constitutional violations of Officer Jefferson and the other officers made possible by unconstitutional policies or "code of silence" acquiesces.

100.   As a matter of both policy and procedure, the City of Jackson, Mississippi, JPD, and Chief Davis facilitate the very type of misconduct at issue here by failing to adequately investigate, punish, and discipline prior instances of similar misconduct, and by failing to train or enforce policies and procedures on the books, if such policies and procedures exist, thereby leading Jackson police officers to believe their actions will never be scrutinized, and in that way, directly encouraging future abuses such as those affecting Plaintiff.

101.   The aforementioned actions and omissions of the Defendants were proximately caused by the policies, practices, and customs of the City of Jackson, Mississippi, JPD, and Chief Davis which were also the underlying cause of the constitutional injuries at issue and the serious physical and mental injuries of Plaintiff.

102.   Due process rights are protected by the Fourteenth Amendment for unconstitutional actions by state actors. These rights included prohibitions against assault and battery committed by police officers, use of formal restraints and as handcuffs, and lies at the heart of the liberty interests protected by the Fourteenth Amendment due process clause. Plaintiff's detention for three days without probable cause, without a hearing, and left in handcuffs for eight hours, was not objectively reasonable in light of Plaintiff's clearly established legal rights.

103.   Defendants committed the above-described actions and/or omissions under color of state law and by virtue of their authority as officers of the JPD and substantially deprived Plaintiff of her clearly established rights, privileges, and immunities guaranteed to her by the Fourth and Fourteenth Amendments of the United State's Constitution in violation of 42 U.S.C. §1983 and §1988. As a direct and proximate result of Officer Jefferson's and Officer Drain's

33

actions, Plaintiff was injured, and her constitutional rights under the Fourth and Fourteenth Amendments of the United States Constitution were violated.

104.    Prior to July 17, 2021, JPD, City of Jackson, Mississippi, and Chief Davis permitted, encouraged, tolerated, and ratified an official pattern, customs, and practices by its officers of unsafe behaviors using excessive and unjustified force and cruel and unusual punishment knowing that said practices violated Plaintiff's and other's free exercise and enjoyment of rights and privileges secured to them by the Constitution of the United States of America and the Constitution of the State of Mississippi. This pattern of conduct was officially addressed by the Mayor's Executive Order.

105.    Defendants directly or with deliberate indifference under color of law approved and/or ratified the unlawful, deliberate, malicious, reckless, and wanton conduct of its officers. By failing to enact proper procedures and policies for disciplining officers who violate the civil rights of persons or by failing to enforce any such policy or procedure by punishing or censuring officers. Defendant officers believed their actions would not be properly monitored by supervisor officers, and that unlawful conduct would not be investigated but would be tolerated instead. Defendants approved, condoned, and ratified the unlawful conduct of its officers. Specifically, the City of Jackson, Mississippi's law enforcement officers utilized excessive force and acted in deliberate indifference to Plaintiff's health and welfare by escalating the situation in an unnecessary fashion. The direct and proximate result of the Defendants' actions and/or inactions was the Plaintiff suffered severe physical and mental injuries and loss of liberty.

106.    The City of Jackson, Mississippi, JPD, and Chief Davis have allowed police officers to engage in a pattern of conduct that has violated the civil rights of persons for years leading to the serious physical and mental injuries of Plaintiff by failing to enforce policies and

procedures and by ratifying the unconstitutional conduct of officers by not punishing them and allowing then to continue serving as law enforcement officers instead. The serious physical and mental injuries of Plaintiff would be tragic if it were the only time the Defendants had been found guilty of depriving citizens of their constitutional rights, but it becomes even more tragic when the overall conduct of the City of Jackson, Mississippi, JPD, and Chief Davis is considered, and the overall picture seen of a city and its police department that have tolerated, ratified, and virtually encouraged this bad and unlawful behavior. It is not enough to have policies that prohibit constitutional violations. The City of Jackson, Mississippi, JPD, and Chief Davis must also enforce those policies and must send a clear message to its officers that they will not tolerate violations of those policies by its officers.  Instead of trying to send that message, the City of Jackson, Mississippi, JPD, and Chief Davis have chosen to turn a blind eye to the actions of Officer Jefferson and other fragrant constitutional rights violations by its officers. Upon information and belief, Chief Davis and the command staff of the JPD, and very likely the City of Jackson, Mississippi, turned a blind eye to protect Officer Jefferson and other officers, The Defendants were aware of the unconstitutional conduct of its officers yet facilitated, approved, and condoned their actions.

107.    The injuries of Plaintiff could have been avoided had the City of Jackson, Mississippi provided better or more training as to the proper use of force. This lack of adequate training amounts to an unconstitutional policy.

108.    The City of Jackson, Mississippi was on notice of each and every constitutional violation alleged herein taking place by JPD's officers and Defendants. As a direct and proximate result of the actions and omissions of the Defendants, Plaintiff suffered serious physical and mental injuries, and her rights under the Fourth and Fourteenth Amendments of the United States'

Constitution were violated. The Defendants' own policies, customs, and practices caused the constitutional deprivation of Plaintiff's rights.

109.    As a matter of both policy and practice, the City of Jackson, Mississippi, JPD, and Chief Davis directly encourage, and are thereby the moving force behind the very type of misconduct at issue here, by failing to adequately train and/or retrain, supervise, discipline, and control officers such that their failure to do so manifests deliberate indifference. Defendants, particularly the City of Jackson, Mississippi and Chief Davis, knew that JPD's officers freely violated the constitutional rights of individuals and the practices and customs and are widespread and well-settled. Under cover of the well-established, unwritten policy, JPD officers violated Plaintiff's constitutional rights. The execution of this unwritten policy and custom was the proximate cause of the violation of Plaintiff's rights and the ensuing damages she sustained.

110.    Defendant's, particularly the City of Jackson, Mississippi and Chief Davis, knew that JPD's officers freely violated the constitutional rights of individuals, and this custom was wide-and-well-settled. Under cover of the well-established, unwritten policy caused its JPD officers to violate Plaintiff's constitutional rights. The City of Jackson, Mississippi, Hinds County chief, and Sheriff Jones had notice of its employees' pattern of unconstitutional acts of their subordinates and was deliberately indifferent to or authorized these acts. The execution of this unwritten policy and custom was the proximate cause of the violation of Plaintiff's rights and the ensuing damages she sustained.

111.    The City of Jackson, Mississippi does not properly investigate police seizure of civilians, uses of excessive force, or properly discipline officers for those acts. The aforementioned actions and omissions of the Defendants were proximately caused by the polices, practices, and customs of the City of Jackson, Mississippi, JPD, and Chief Davis which were also the underlying

cause of the serious physical and mental injuries of Plaintiff. The City of Jackson, Mississippi,

through its unconstitutional policies and customs, was the main force behind the violations against

the Plaintiff. Defendants committed the above-described actions and/or omissions under color of

law, and by virtue of their authority as officers of the JPD, and substantially deprived Plaintiff of

her clearly established rights, privileges, and immunities guaranteed to her through the Fourth and

Fourteenth Amendments of the United States' Constitution in violation of 42 U.S.C. §1983.

### COUNT VIII
(42 U.S.C. §1985) (2), (3)
(42 U.S.C. §1986)
CONSPIRACY TO INTERFERE WITH CIVIL RIGHTS, FAILURE TO INTERVENE,
& CRUEL AND UNUSUAL PUNISHMENT IN VIOLATION OF PLAINTIFF'S
RIGHTS SECURED BY THE FOURTH, FIFTH, EIGHTH, & FOURTEENTH
AMENDMENTS OF THE UNITED STATES CONSTITUTION
DEFENDANTS: CITY OF JACKSON, MISSISSIPPI, JACKSON POLICE
DEPARTMENT, CHIEF DAVIS, OFFICER JEREMY JEFFERSON, OFFICER DOE
DRAIN, OFFICER JANE DOE, OFFICERS JOHN/JANE DOES 1 – 25,
SHERIFF TYREE JONES, & HINDS COUNTY, MISSISSIPPI

112.   Plaintiff reasserts and incorporates by reference all allegations set forth above

pursuant to the Federal Rights of Civil Procedure, Rule 10(c).

113.   All Defendants present at the scene observed the excessive force to Plaintiff, and

each had the opportunity and means to prevent the harm from occurring, yet knowing that a

constitutional violation was being committed, all of the aforementioned Defendants failed to

intervene.

114.   At the scene, Officer Jefferson told his fellow officers, after he had hit the Plaintiff,

that the Plaintiff "had to go to jail." All the Defendant officers at the scene, including Officer Jane

Doe and Officer Doe Drain, were aware that Officer Jefferson had violated Plaintiff's civil rights,

and that there was no good faith, proximate cause, or objective reasonableness to have detained

and brutally beaten the Plaintiff. Unfortunately, hereafter, all of the officers at the scene went along

with Officer Jefferson and conspired to do whatever it took to wrongfully place Plaintiff in jail. They had Officer Jefferson's back. The aforesaid officers acting under color of law in their official and individual capacities conspired against Plaintiff for the purpose of impending, hindering, obstructing, and defeating Plaintiff with the intent to deny Plaintiff equal protection of the law.

115.    Officer Jefferson exercised control at the scene of the deprivation of Plaintiff's rights and thereafter. As set forth above, Officer Jefferson intentionally wielded his authority beyond that of a reasonable officer under color of law. Officer Jefferson told his fellow officers, who were also acting under color law, "…She is going to jail. She has to go to jail because I pushed her." These were Officer Jefferson's orders to his fellow officers, whereupon the Defendants became fellow conspirators to deprive Plaintiff of her constitutional rights, to wrongfully and without compromise get Plaintiff to jail, and to maliciously cover up the wrongful and willful deprivation of Plaintiff's rights under the Fourth, Fifth, Eighth, and Fourteenth Amendments to the Constitution of the United States.

116.    After Officer Jefferson gave his orders, all the Defendants acted jointly in concert in the furtherance of the conspiracy resulting in the deprivation of Plaintiff's rights and liberties. All the Defendants came to a mutual understanding to try to accomplish a common and unlawful plan, and each Defendant shared the same conspiratorial plan.

117.    Once the pirate mentality of "one for all and all for one" was introduced to the officers, they all came to an unwritten, unconstitutional "brotherhood" and mutual understanding to accomplish a common and unlawful plan with each member of the conspiracy sharing the same conspiratorial objective – get Plaintiff to jail and keep quiet- seizure and detention without probable cause and cruel, unusual punishment.

38

118.    Officer Jefferson told his officers, "… She has to go to jail because I pushed her," and not, "…She has to go to jail because she pushed me." Then, in furtherance of the conspiracy, Plaintiff was beaten, tased, jailed without probable cause, and was not told what she had done wrong or why she was incarcerated. The conspiracy continued with Plaintiff being literally dropped off at the Raymond Detention Center and was completed by the understanding among all Defendants that no records would be generated or produced perpetuating the unlawful events which had occurred. All of this was the proximate cause of Plaintiff's damages.

119.    At no time did the JPD officers intervene to prevent their fellow officers from violating Plaintiff's constitutional rights when there was a realistic opportunity to prevent harm from occurring to the Plaintiff.

120.    Defendants, Hinds County and Sheriff Tyree Jones, knew that placing Plaintiff in general population in RDC had been ordered unconstitutional in violation of the Eighth Amendment. Plaintiff avers these Defendants were also aware that no probable cause existed to arrest the Plaintiff. The very unusual circumstances of dropping Plaintiff at the RDC front door clearly indicates that a call had been made, the "code of silence" was implemented, and these Defendants were part of the conspiracy.

121.    Plaintiff would request that the Court take judicial notice that placing the Plaintiff in the RDC was in direct violation of Plaintiff's constitutional rights provided by the Fourth, Eighth, and Fourteenth Amendments of the United States Constitution.

122.    The Supreme Court has repeatedly held that public officials are not entitled to qualified immunity for obvious violations of the constitution. All of the above Defendants fail to have qualified immunity in their actions since they violated Plaintiff's patently established constitutional rights, acted recklessly and without probable cause, and the unlawfulness

of their conduct was clearly established law. A reasonable official would have understood that what he was doing violated a constitutional right. All Defendants had notice and warning through existing precedent that what they did was not objectively reasonable, of which a reasonable officer would have known and was clearly established at the time of the violation. The constitutional violations, due to the policies, customs, and practices of JPD and the City of Jackson, Mississippi, caused the unconstitutional deprivation and resulting damages. Every reasonable officer would have understood that the deliberate cruelty of these Defendants was unlawful and violated Plaintiff's constitutional rights.

## **COUNT IX**
### (42 U.S.C. §1983)
MALICIOUS PROSECUTION & DENIAL OF TIMELY JUDICIAL DETERMINATION
IN VIOLATION OF PLAINTIFF'S RIGHTS SECURED BY THE FOURTH, FIFTH,SIXTH,
EIGHTH, & FOURTEENTH AMENDMENTS TO THE UNITED STATES CONSTITUTION
DEFENDANTS: CITY OF JACKSON, MISSISSIPPI, JACKSON POLICE DEPARTMENT,
CHIEF DAVIS, OFFICER JEREMY JEFFERSON, OFFICER DOE DRAIN, OFFICER JANE DOE,
OFFICERS JOHN/JANE DOES 1 – 25, SHERIFF TYREE JONES, & HINDS COUNTY, MISSISSIPPI

123.    Plaintiff reasserts and incorporates by reference all allegations set forth above pursuant to Federal Rules of Civil Procedure, Rule 10(c).

124.    Each of the Defendants were directly involved and/or conspired maliciously to falsely accuse the Plaintiff of criminal actions towards the JPD. At some time after Plaintiff's release, she received a subpoena to attend her trial for "Assault/Police Office – WSD." This was Plaintiff's first notice of a trial setting and what the charges were against her. Plaintiff dutifully attended the trial, which was dismissed by the Court, a termination in Plaintiff's favor on January 24, 2022 (Attached hereto as Exhibit "K") (See also Thomson v. Clark, 142 S.C.T. 1332 (2022)).

125.    Defendants violated Plaintiff's constitutional rights provided by the Fourth, Fifth, Sixth, and Fourteenth Amendments to the United States' Constitution by deprivation of Plaintiff's liberty pursuant to legal process with an unjustified seizure. Defendants lacked the requisite amount of probable cause to believe that Plaintiff was committing or about to commit a crime. Said constitutional violations include Plaintiff's continued confinement without probable cause.

126.    The Defendants seized the Plaintiff by legal process that was not supported by probable cause, and the criminal procedure against Plaintiff was terminated in her favor.

127.    The Defendants caused Plaintiff's continued confinement and prosecution. The criminal actions were terminated in Plaintiff's favor. No probable cause supported the arrest, insurmountable continued confinement, or prosecution. All Defendants acted with malice, in that they effected Plaintiff's arrest and prosecution for a purpose other than that of bringing an offender to justice. Instead, their clear intent was to harass, oppress, and silence the Plaintiff and cover up the JPD's brutal behavior and constitutionally volitive actions.

128.    The constitutional violations directed to Plaintiff shocks the conscience through conduct that was conscious or through complete indifference and disregarded the risk of an unjustified deprivation of liberty.

129.    When Plaintiff was arrested without a warrant, this triggered the Fourth Amendment requirement of an immediate judicial determination of probable cause as a perquisite to an extended restraint of Plaintiff's liberty following arrest.

130.    As a result of this bogus and malicious prosecution, Plaintiff has suffered damages in the form of mental and emotional distress, humiliation, damages to her reputation, sleeplessness, and severe anxiety, as well as other damages to be described at trial.

131.     Each of the Defendants were directly involved and/or conspired in grossly negligent actions, which evidence reckless indifference and disregard to the impact upon the Plaintiff, Plaintiff alleges by way of gross and reckless actions of negligence, that Defendant's actions caused Plaintiff extended humiliation among her peers, as well as deep mental and emotional distress, sleepless nights, anxiety, fear of being in public, and extreme fear of the police.

<u>**COUNTY X**</u>
(42 U.S.C. §1983)
PUNITIVE DAMAGES
DEFENDANTS: ALL DEFENDANTS

132.     Plaintiff reasserts and incorporates by reference all allegations set forth above pursuant to the Federal Rules of Civil Procedure, Rule 10(c).

133.     Defendant, Officer Jefferson, individually and in his official capacity, knew or should have known that his conduct would naturally and probably cause the aforesaid officers, acting under color of law in their official and independent capacities, to conspire with him against the Plaintiff for the purpose of impending, hindering, obstructing, and defeating the Plaintiff without due process with the intent to deny Plaintiff her equal protections of the laws. Further, there is no indication that Officer Jefferson filed an incident report of the event or told Plaintiff why she was charged and incarcerated.

134.     Plaintiff requests an award of punitive damages against Officer Jefferson in his individual capacity as a result of each of these Defendants' outrageous, willful, and wanton acts and conduct, which was with utter indifference and disregard for Plaintiff's safety and this Defendant's purposeful violations of Plaintiff's constitutional rights. Officer Jefferson's conduct was motivated by evil intent or malice and showed reckless, callous indifference to the federally protected rights of others. Plaintiff alleges that Officer Jefferson, in his individual and official capacity, knew or should have known that his conduct would naturally and probably result in

injury, and yet this Defendant continued such conduct in reckless disregard of the consequences from which malice and intentional purpose may be inferred.

135.    It is known that both Jane Doe and Officer Doe Drain observed the unconstitutional treatment of the Plaintiff by irrational and uncontrollable actions of Officer Jefferson. Officer Doe Drain tased the Plaintiff three times, twice while on the ground covered in her own urine. Defendants Jane and John Doe knew at all times that they and their fellow officers were violating Plaintiff's clearly established constitutional rights yet agreed to be a part of the conspiracy and retaliations against the Plaintiff when reasonable officers would have acted otherwise.

136.    Officer Jane Doe made several verbal attempts to stop Officer Jefferson but failed to exercise her full authority over Officer Jefferson. This sad set of circumstances became ridiculous when the Plaintiff asked Jane Doe what she was being charged with, and Jane Doe replied, "I do not know!"

137.    All of the Defendants present who failed to intervene to prevent Officer Jefferson's maniacal actions of violating the Plaintiff's constitutional rights are responsible and liable under 42 U.S.C. §1983 which is incorporated herein by reference.

138.    All of the above present were aware of the unlawful conduct of Officer Jefferson and Officer Doe Drain and had a reasonable opportunity and the power to intervene and prevent harm inflicted upon the Plaintiff, violating Plaintiff's constitutional rights granted by the Fourth and Fourteenth Amendments to the United States' Constitution. All of these Defendants had the power and opportunity to prevent Officer Jefferson's and Officer Doe Drain's unconstitutional actions and refused to do so.

139.    All the Defendants intentionally and jointly conspired to protect each other in violating the civil rights of the Plaintiff, starting with a lack of probable cause. Plaintiff was

brutally searched, brutally handcuffed for eight hours, tased, twice while on the ground, unmercifully beaten, ridiculed while handcuffed, and mocked. Plaintiff was wrongfully fingerprinted and booked twice without being told why. Plaintiff was confined in jail for three days, during which she was forced to bend over unclothed while a cavity search was conducted of her rectum and other private parts. This gross and wanton conduct is ripe for punitive damages.

140.    Defendants Davis, City of Jackson, JPD, Hinds County and Jones conspired with the Defendant officers to hide the unconstitutional actions of the officers at the scene and willfully failed to implement the Mayor's Executive Order, which would have protected the Plaintiff from the unconstitutional violence she sustained.

141.    Each of these policies and actions were directly violated by the Defendants during its "free for all" and out of control actions at the scene so much so as to have been motivated by evil intent and/or so as to demonstrate a callous or reckless indifference to Plaintiff's constitutional rights. Defendants, and each of them had a subjective consciousness of the risk of injury and/or illegality of their actions and a criminal indifference to their civil obligations. Then, all Defendant's attempted to hide what had occurred. Therefore, all of the Defendants are subject to punitive damages and should be punished in such a way as to deter forever the miscarriage of justice visited upon the Plaintiff.

142.    During the unconstitutional seizure and confinement of the Plaintiff, she was never informed of the charges against her. When Plaintiff asked Officer Jane Doe what she was being charged with, Officer Jane Doe, who was at all times present and part of the conspiracy against the Plaintiff, responded, "I don't know." Thereafter, being incarcerated for three days, she was never informed of the charges against her and never had a hearing. When Plaintiff asked Officer

Jefferson what she had done wrong and with what she was being charged, he was silent and never responded to the Plaintiff.

143.    Such action on the part of all the Defendants violated Plaintiff's rights under the United States' Constitution, Sixth Amendment, to be informed of the nature and cause of the accusation. In their actions, Defendants knew Plaintiff had the rights conveyed by the Sixth Amendment, yet intentionally, willfully, with evil intent and/or demonstrating a reckless or callous indifference, violated those sacred rights. At all times above, Defendants were acting in their individual and official capacities as employees of the JPD or Hinds County acting under color of law.

## INJURIES & DAMAGES

144.    Plaintiff reasserts and incorporates by reference all allegations set forth above pursuant to the Federal Rules of Civil Procedure, Rule 10(c).

145.    As a direct, foreseeable, and proximate result of Defendants' willful, wanton, and egregious conduct described hereinabove, and with Defendants' utter indifference to and conscious disregard to Plaintiff's safety and constitutional rights, the Plaintiff sustained and seeks recovery in damages for the following injuries, losses, and damages:

A    Personal, physical, and emotional injuries, past, present, and future;

B.    Physical pain and suffering, past, present, and future, including any aggravation or prior existing conditions;

C.    Emotional pain and suffering (mental anguish), past, present, and future;

D.    Permanent impairment to the body as a whole, both physical and mentally;

E.    Medical bills and expenses, past, present, and future;

F.    Loss of earnings and earning capacity, past, present, and future;

G.    Loss of enjoyment of life, both present and future;

H.    Extreme embarrassment;

I.    Loss of dignity;

J.    Loss of reputation;

K.    Punitive damages;

L.    Attorney's fees, costs, and expenses pursuant to 42 U.S.C. §1988 and the Civil Rights Act of 1964;

M.    All such further relief, both general and specific, to which the Plaintiff may be entitled in the premises.

## PRAYER FOR RELIEF

Wherefore, Plaintiff, Aquinta H. Palmer, respectfully requests the following relief:

A.    That proper process be issued and served upon Defendants with a copy of the Complaint, and they be required to appear and answer;

B.    Compensatory damages in the amount of $7,000,000.00 or in such amount as found due and owing by the jury and/or this Court;

C.    Punitive damages in the amount of $15,000,000.00 for Defendants' intentional and/or willful and wanton conduct described herein;

D.    Attorney's fees, costs, and expenses pursuant to 42 U.S.C. §1988 and the Mississippi Civil Rights Act of 1964;

E.    Such other and further relief as this Court may deem just and proper;

F.    Plaintiff further prays for leave to subsequently amend this Complaint to allow the pleadings to conform to the facts and evidence obtained during discovery and the trial of this cause.

46

Respectfully submitted this the _____ day of September, 2022.

Respectfully submitted,

**AQUINTA H. PALMER**

BY: _____
ROBERT S. ADDISON

BY: _____
MATTHEW THOMPSON

BY: _____
MICHAEL R KELLY

ROBERT S. ADDISON – MSB# 1152
robert@thompsonaddison.com
MATTHEW THOMPSON – MSB# 101901
matthew@thompsonaddison.com
MICHAEL KELLY – MSB# 103547
michael@thompsonaddison.com
WILLIAM C. COON – MSB# 103857
william@thompsonaddison.com
THOMPSON ADDISON, PLLC
2060 MAIN STREET
MADISON, MS 39110
TELEPHONE: (601)-850-8000
FACSIMILE: (601)-499-5219