IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF MISSISSIPPI
NORTHERN DIVISION

AQUINTA PALMER                                                    PLAINTIFF

vs.                                     Civil Action No. 3:22-cv-00508-DPJ-ASH

JEREMY JEFFERSON, *et al.*                                        DEFENDANTS

**PLAINTIFF'S MEMORANDUM OF AUTHORITIES IN SUPPORT OF
RESPONSE IN OPPOSITION TO HINDS COUNTY, MISSISSIPPI'S
MOTION FOR SUMMARY JUDGMENT**

The Plaintiff, Aquinta Palmer, submits this Memorandum of Authorities in
opposition to Hinds County's Motion for Summary Judgment. Defendant fails to meet
its burden under Rule 56 of the Federal Rules of Civil Procedure, as material factual
disputes remain on Plaintiff's claims under 42 U.S.C. § 1983, including conditions of
confinement and unlawful strip search.

## FACTS

Plaintiff was arrested by Jackson Police on July 17, 2021, on misdemeanor
charges including assault, interference with a police officer's duties, disorderly
conduct, and failure to obey.[1] Officer Jefferson transported Plaintiff to the Raymond
Detention Center (RDC) in the early morning hours. When Plaintiff first arrived at
RDC, she was put in a holding cell with feces on the wall in full view of 10-12 male
inmates in an adjacent holding cell.[2] The men sexually harassed Plaintiff, talking
about what they would do to her and how they could see her breasts through her jail

---

[1] See Ex. "A," Arrest Report.
[2] Dk. [99-1] Palmer Depo., at 79:18-19; 82:2-6.

issued t-shirt.[3] Plaintiff was kept in the holding cell for 6 or 7 hours – essentially all day – and never received a meal.[4] Plaintiff was then placed into general population with pre-trial detainees, as well as inmates who were awaiting transfer to prison – i.e., convicts.[5]

Once in general population, Plaintiff's fortunes did not improve. She learned that because she had been charged with assaulting a police officer, the jail staff had restricted the inmates television time – ostensibly a safety measure, but one which put Plaintiff in danger of bodily harm from inmates who were displeased with the interruption of their normal activities.[6] Plaintiff tried to tell one of the guards that inmates were threatening her, but she was told to "get the fuck away" from the guard.[7] When she tried to tell another guard about the threat, the guard simply told her to keep her distance – sage advice in a collective housing unit with 40 women and zero personal space.[8] Even among the female inmates, Plaintiff was not safe from the sexual harassment. One inmate who appeared to be mentally ill told the Plaintiff "You're going to be mine" and described sexual acts she wanted to engage in with the Plaintiff.[9] Again Plaintiff tried to take her grievance to the guards, and again the only advice she received was to stay away from other inmates.[10]

---

[3] *Id.* at 82:7-17.
[4] *Id.* at 85:7-8; 87:2-9.
[5] *Id.* at 98:3-7.
[6] *Id.* at 99:8-25.
[7] *Id.* at 100:6-9.
[8] *Id.* at 101:23—102:1.
[9] *Id.* at 105:11—106:1.
[10] *Id.* at 108:15-23.

In short, Plaintiff was held in a facility known for violence and filth, and she was subjected to threats of sexual assault and physical violence. Staffing was either insufficient or insufficiently trained to halt the threats. And, Plaintiff was indiscriminately housed with convicted inmates, despite being a pretrial detainee awaiting bond.

## SUMMARY JUDGMENT STANDARD

"Pursuant to [Rule 56], the movant first has to address the facts and seek to persuade the court that all of the 'material' facts are undisputed." *See* . *Williams v. City of Yazoo, Miss.*, No. 3:15-CV-103-HTW-LRA, 2020 WL 6122357, at *11 (S.D. Miss. Oct. 17, 2020) (quoting *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986)). A fact is material where its resolution could affect the outcome of the action. *Id.* (internal citations omitted). "A dispute is genuine if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). "The court must view the facts, evidence, and all inferences drawn therefrom in the light most favorable to the nonmoving party." *Williams, supra*., at 12.

## ARGUMENT

### 1.    Policy Maker

Hinds County ultimately has full control, authority and responsibility for the conditions of RDC and the safety and security of the inmates confined therein. See Miss. Code Ann. §§ 19-3-41; and 19-5-1. Thus, the County is the policy-making authority. Indeed, the County itself entered into the 2016 consent decree, discussed

below, with the federal government to remediate the unconstitutional conditions at RDC. While the sheriff may be tasked with caretaking, he answers to the county and, under the consent decree, the County is directly responsible for oversight of RDC.

### 2.    Conditions of Confinement

The right of due process guaranteed to the Plaintiff by the Fourteenth Amendment prohibits punishment for a crime for which the Plaintiff had not yet been convicted. *Hamilton v. Lyons*, 74 F.3d 99, 103 (5th Cir. 1996) ("The Fourteenth Amendment prohibits the imposition of conditions of confinement on pretrial detainees that constitute punishment.") (citing *Bell v. Wolfish*, 441 U.S. 520, 535 (1979)). As a pre-trial detainee, the Plaintiff had a clearly established constitutional right to be free from punishment, and this right is one which every law enforcement official knows. *Ellis v. Rusing*, No. 3:11cv749–LRA, 2014 WL 1276501, *2 (S.D. Miss., March 27, 2014) (citing *Bell*, 441 U.S. at 535). The conditions at RDC were such that Plaintiff's confinement there amounted to punishment in violation of her due process rights.

In order to establish a claim for unconstitutional conditions of confinement, Plaintiff must prove the "existence of an identifiable intended condition or practice that was not reasonably related to a legitimate government objective." *Id.* "The practice may be an explicit policy, such as a written rule, or it may also be manifested by a *de facto* policy [i.e.,] acts or omissions sufficiently extended or pervasive to prove an intended condition or practice. In such a case, the intent to punish may be presumed." *Id.*

It has been well established that "conditions [at RDC] are unsafe by any objective measure."[11] Since 2016, Hinds County has been under a consent decree to remedy the unconstitutional conditions of confinement at RDC.[12] Over five years later, in a November 2021 Order to Show Cause, Judge Carlton Reeves noted the following with respect to RDC:

- The grand jury concluded that RDC was "in a deplorable condition and inadequately staffed."[13]

- The U.S. Dept. of Justice's Civil Rights Division investigated conditions at RDC and concluded that the County was violating the Eighth and Fourteenth Amendments by, among other things described in its 29-page report, failing to provide "minimum levels of protection from violence," failing to have "sufficient numbers of trained staff," and incarcerating persons "beyond their court-ordered release dates."[14]

- Mississippi Department of Corrections removed all state inmates from RDC due to the deplorable conditions.[15]

- During 2021 – the year in which Plaintiff was confined at RDC – there were a "record number of fights and assaults at RDC . . . there continue to be fires set by inmates, there is an extremely large amount of contraband in

---

[11] Vanita Gupta, <u>Investigation of the Hinds County Adult Detention Center</u>, U.S. Dept. of Justice (May 21, 2015) Dk. [3-2].
[12] Ex. "B", Consent Decree.
[13] Ex. "C," Order to Show Cause (Nov. 23, 2021), at 6.
[14] *Ibid.*
[15] *Id.* at 7.

the facility including drugs, there have been a number of overdoses . . . and there have been three deaths, two by suicide."[16]

- Entire housing units at RDC are routinely left unattended.[17]

- Chronic and severe understaffing has resulted in "a continuing series of major maintenance problems as inmates destroy the work of County and contract personnel almost as fast as it is completed."[18]

- "[T]here is no fire alarm system in the facility, no sprinkler system in the inmate housing areas of RDC...", and inmates regularly set fires.[19]

- "It has long been known that many of the security doors and locks at RDC are not functional."[20]

- There is a proliferation of "trash dumpster cells" that serve "as a breeding ground for vermin."[21]

The horrendous state of RDC has been deemed unconstitutional for over half a decade. Despite being under a federal consent decree since 2016, Hinds County has utterly failed to remedy the unconstitutional conditions of confinement at RDC, manifesting a *de facto* policy of violating detainees' rights.

Hinds County is directly responsible for the *de facto* policy of punitive conditions for pretrial detainees at RDC and for allowing JPD to utilize it to punish the Plaintiff. Hinds County's *de facto* policy of maintaining unconstitutional

---

[16] *Id.* at 10.
[17] *Id.* at 19.
[18] *Ibid.*
[19] *Ibid.*
[20] *Id.* at 20.
[21] *Id.* at 21.

conditions of confinement at RDC is tantamount to punishment for a crime for which Plaintiff had yet to be convicted and was ultimately exonerated.

The consent decree, and the many findings made since the decree was implemented, are admissible to prove that the County was on notice of the unconstitutional conditions at RDC. See *Wesley by Wesley v. Armor Corr. Health Servs. Inc*, No. 19-CV-0918-BHL, 2022 WL 16748861, at *5 (E.D. Wis. Nov. 7, 2022).

The conditions at RDC are reminiscent of the conditions at various Alabama state prisons which were adjudicated to be unconstitutional in *Pugh v. Locke*, 406 F. Supp. 318, 329–30 (M.D. Ala. 1976), aff'd and remanded *sub nom. Newman v. State of Ala.*, 559 F.2d 283 (5th Cir. 1977), cert. granted in part, judgment rev'd in part on other grounds *sub nom. Alabama v. Pugh*, 438 U.S. 781, 98 S. Ct. 3057, 57 L. Ed. 2d 1114 (1978). The district court in *Pugh* held, "[t]he evidence establishes that inmates are housed in virtually unguarded, overcrowded dormitories, with no realistic attempt by officials to separate violent, aggressive inmates from those who are passive or weak. The tension generated by idleness and deplorable living conditions contributes further to the ever-present threat of violence from which inmates have no refuge." *Id.*

Plaintiff was clearly passive and weak compared to the hardened criminals she was housed with at RDC, and she could find no respite from the constant barrage of male and female sexual harassment and threats of violence. The only advice she received from guards was to stay away from other inmates – an impossibility in an overcrowded housing unit within no cells.

The conditions described in *Pugh* are substantially the same conditions described at RDC for over a decade by a grand jury and court-appointed monitors.[22] And, Hinds County has repeatedly failed to remedy the unconstitutional conditions. Plaintiff was plagued by constant threats of assault during her confinement at RDC, as detailed in her deposition testimony. In any other facility, this may not amount to a constitutional violation, but at a facility like RDC which has been publicly scrutinized for its deplorable conditions, including routine assaults and deaths, merely being confined there and living with the constant threat of assault – *especially* for a pre-trial detainee – is unconstitutional. *Jones v. Diamond (Jones I)*, 594 F.2d 997, 1016 (5th Cir. 1979) (quoting *Woodhous v. Commonwealth of Virginia*, 487 F.2d 889, 890 (4th Cir. 1973) ("confinement in a prison where violence and terror reign is actionable."); *Jones v. Diamond (Jones II)*, 636 F.2d 1364, 1374 (5th Cir. 1981) (combined impact of unconstitutional conditions "made confinement in the [county] jail of any prisoner cruel and unusual punishment and the confinement of pretrial detainees punishment per se."), *overruled on other grounds by Int'l Woodworkers of Am., AFL-CIO & its Loc. No. 5-376 v. Champion Int'l Corp.*, 790 F.2d 1174 (5th Cir. 1986).

### a.   *Housing of Pre-trial Detainees with Convicted Inmates*

"The confinement of pretrial detainees indiscriminately with convicted persons is unconstitutional unless such a practice is reasonably related to the institution's interest in maintaining jail security or physical facilities do not permit their

---

[22] See Collective Ex. "D," Findings and Orders.

separation." *Jones II*, 636 F.2d at 1374 (cleaned up) (citing *Bell v. Wolfish*, 441 U.S. 520, 531 (1979), *Barnes v. Virgin Islands*, 415 F.Supp. 1218, 1235 (D.V.I.1976); and *Hamilton v. Landrieu*, 351 F.Supp. 549, 552 (E.D.La.1972)); see also *Alderson v. Concordia Par. Corr. Facility*, 848 F.3d 415, 420 (5th Cir. 2017) ("Housing pretrial detainees with DOC inmates is a violation of their rights unless such a practice is reasonably related to the institution's interest in maintaining jail security or physical facilities do not permit their separation . . . and nothing suggests that an exception to the rule applies.")

In its attempt to skirt liability for an obviously unconstitutional practice, the County misrepresents Plaintiff's testimony concerning her detention with convicted inmates. Plaintiff specifically said that some of the people she was housed with were awaiting transfer to *prison*.[23] She admittedly did not know *how many* of the inmates had been convicted, but this does not negate her testimony that some of the women she was confined with were convicted. The County's attorney continued to press the Plaintiff for more information, asking her whether the women she spoke with were awaiting trial. Plaintiff conceded "I *guess* ma'am. I *guess* that's right."[24] First, that was speculative testimony that Plaintiff only offered under pressure from opposing counsel for information that Plaintiff did not have. What Plaintiff did know, and what she specifically stated, was that some of the women she was confined with were awaiting transfer to *prison*, meaning they had already been convicted. For obvious

---

[23] Dk. [99-1], Palmer Depo., at 98:3-7.
[24] *Id.*, at 99:1-2 (emphasis added).

reasons, Plaintiff could not poll the inmates to determine *how many* had been convicted.

The County has offered no evidence that its housing of pre-trial detainees with convicted inmates serves any legitimate interest in maintaining jail security or that physical facilities do not permit their separation. This practice is per se unconstitutional absent such a showing, especially at a facility like RDC where unconstitutional conditions have prevailed for the better part of a decade.

The County also incorrectly asserts that Plaintiff has not demonstrated any harm. The Fifth Circuit has long recognized that "psychological injury suffice[s] to support a constitutional cause of action." *Dunn v. Denk*, 54 F.3d 248, 250 (5th Cir. 1995). Plaintiff testified to the fear she experienced while confined at RDC. Plaintiff would ultimately receive a diagnosis of post-traumatic stress disorder as a result of the July 17, 2021 incident and her detention at RDC. These injuries are sufficient to state a constitutional claim.

### b.    *Visibility of Female Inmates*

The 2016 complaint which gave rise to the consent decree specifically mentione the failure to adequately separate female and male prisoners.[25] That Plaintiff was not "left alone" outside of her cell or housed in a cell with male inmates is beside the point. She was subjected to sexual harassment by male inmates who were insufficiently separated by sight and sound, despite the County being on notice of this very problem since at least 2015.

---

[25] Ex. "E," *U.S. v. Hinds County* Complaint, at ¶ 27.

c.    *Threats of Sexual Assault and Violence*

The Fourth Circuit Court of Appeals in *Woodhous* held, "A prisoner has a right, secured by the eighth and fourteenth amendments, to be reasonably protected from constant threat of violence and sexual assault by his fellow inmates, *and he need not wait until he is actually assaulted to obtain relief.*" *Woodhous*, 487 F.2d at 890 (emphasis added). As evidenced by Judge Reeves's findings in 2021, violence was still pervasive at RDC when the Plaintiff was detained there and the County had made little to no progress in curbing the violent attacks. Plaintiff faced constant threats of violence and sexual assault – from the men who harassed her from a holding cell when she first arrived to the female inmate that threatened her over losing television privileges (which was entirely out of Plaintiff's control), to the female inmate that told Plaintiff she was going to sexually assault her. And at no point did a single guard intervene to put a stop to the threats.

d.    *Strip Search*

Strip searches of detainees being introduced into a jail are not *per se* unconstitutional. This general proposition, however, is not without its limits. The Supreme Court in *Florence v. Board of Chosen Freeholders of County of Burlington*, 566 U.S. 318, 330 (2012), held that "deference must be given to the officials in charge of the jail *unless there is substantial evidence demonstrating their response to the situation is exaggerated.*" (emphasis added). For example, the Fifth Circuit in *Stewart v. Lubbock County, Texas*, held a strip search policy applied to Class C misdemeanor offenders awaiting bond "when no reasonable suspicion existed that

11

they as a category of offenders or individually might possess weapons or contraband" to be in violation of the Fourth Amendment. 767 F.2d 153, 156-57 (5th Cir. 1985). The law is "clearly established that strip searches conducted without individualized reasonable suspicion or probable cause are unlawful." *Williams v. Kaufman Cnty.*, 352 F.3d 994, 1005 (5th Cir. 2003) ("We have allowed strip searches in custodial situations but, consistently, not when the suspect has committed only a minor offense and there exists no reasonable suspicion that he might possess weapons or contraband."). Fifth Circuit precedent gave Hinds County more than fair warning that the actions against the Plaintiff violated her clearly established constitutional rights. *Id.*

Here, the Plaintiff was arrested on misdemeanor charges.[26] Contrary to Hinds County's claim of ignorance as to the nature of the charges, RDC staff were given a copy of Officer Jefferson's Arrest Report.[27] That report is devoid of any felony charges or drug charges that might warrant enhanced search procedures for the Plaintiff, and Plaintiff had no criminal history prior to her arrest on July 17, 2021. Moreover, Hinds County has presented no evidence that Plaintiff displayed any characteristics warranting enhanced search procedures.

Plaintiff's alleged offenses were misdemeanors; she was never found to be in possession of drugs or weapons; and she had already been booked into city holding and examined at the hospital by the time she reached RDC. In short, there was no

---

[26] See Ex. "A," Arrest Report
[27] See Dk. [93-1], Jefferson Depo., at 104:10-13 (Officer Jefferson indicating that he gave the arrest report to RDC staff who copied and gave it back to him).

reasonable suspicion that Plaintiff might harbor contraband nor any reasonable security interest served by subjecting Plaintiff to the humiliation of a strip search. Plaintiff had been in police custody for several hours before being dropped off at RDC. Hence, any potential security threat she could have posed had been sufficiently neutralized by the time she reached RDC such that the strip search amounted to an egregious violation of Plaintiff's personal right to privacy in the most intimate parts of her body. There is "substantial evidence" demonstrating Hinds County's "response to the situation [was] exaggerated," and Plaintiff's Fourth Amendment rights were violated by the indiscriminate strip search policy at RDC. *Florence*, 566 U.S. at 330.

## CONCLUSION

Genuine questions of material fact on the issues discussed herein preclude summary judgment on the claims against Hinds County. The County's motion should be denied.

Filed: January 31, 2025.

Respectfully Submitted,

**AQUINTA PALMER**

By: *s/ Michael R. Kelly*

W. Matthew Thompson – MS Bar # 101901
*matthew@thompsonaddison.com*
Michael R. Kelly - MS Bar # 103547
*michael@thompsonaddison.com*
Thompson Law Firm, PLLC
2060 Main Street
Madison, MS 39110
Phone: 601.850.8000
Fax: 601.499.5219

## CERTIFICATE OF SERVICE

I hereby certify that on January 31, 2025, I electronically filed the foregoing motion with the Clerk of the Court using the ECF system which sent notification of such filing to all counsel of record.

_s/ Michael R. Kelly_