IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF MISSISSIPPI
NORTHERN DIVISION

**AQUINTA PALMER**                                                                  **PLAINTIFF**

vs.                                            CIVIL ACTION NO.: 3:22-cv-00508-DPJ-ASH

**JEREMY JEFFERSON, et al.**                                              **DEFENDANTS**

### CITY OF JACKSON DEFENDANTS' REBUTTAL MEMORANDUM BRIEF IN SUPPORT OF THEIR MOTION FOR SUMMARY JUDGMENT

Defendants Officer Jeremy Jefferson, Officer Quadarius Draine, Former Chief of Police James Davis, and the City of Jackson, Mississippi, by and through their undersigned counsel, hereby file their Rebuttal Memorandum Brief, in accordance with Local Rule 7(b)(2) and other applicable rules.

### Summary of the Facts

The following facts are undisputed, as established by bodycam footage from Officers Jeremy Jefferson and Quadarius Draine, cell phone footage recorded by Fareno Jackson, and the deposition testimony of Officers Jefferson, Draine and Gallion.

The Plaintiff, Aquinta Palmer, was arrested by Jackson Police Officer Jeremy Jefferson shortly after 2:00 a.m. on Saturday, July 17, 2021, in the parking lot of the Vibe nightclub in Jackson. Officer Jefferson charged the Plaintiff with assault on a police officer, Ex.14, disorderly conduct by interfering with a police officer "by attacking him [Jefferson] from the back while he was arresting another lady [Carmin Winford]," Ex.15, disorderly conduct by behaving in a "loud and boisterous" manner, Ex.16, and disorderly conduct by interfering with and disobeying a police officer, and disorderly conduct in disobeying a police officer "by refusing to comply with [Jefferson's] commands." Ex.17. In his deposition, Officer Jefferson testified that the Plaintiff had physically resisted arrest, also a crime. Ex. 1, Jefferson Dep. 64: 2-12.; 66:13.

Before her arrest, the Plaintiff had spent the evening at the nightclub. Plaintiff's Response, Ex. A, Dep. 10:17 through 12:11. By 2:00 a.m. that morning, the nightclub had served its last call for cocktails, and many club patrons, "rowdy and hollering," had spilled into the club's parking lot, and continued to congregate there instead of going home. Ex. 5, Gallion Dep. 23:1-13; Ex. 1, 18:23 through 19:8; 45:7-10.

Before arresting the Plaintiff, Officers Jefferson and Quadarius Draine had been faced with having to arrest two other clubgoers, Morgan Catchings and Carmin Winford, in the Club Vibe parking lot, both of whom had aggressively fought their arrests. Ex. 2, Draine Dep. 16:1-12;17:18-25;19:4-5; 25:13-14; 40:12-13; Ex.1, 26:9-19; 29:19-25.

Moreover, Fareno Jackson, a clubgoer and the cell phone videographer described below, interfered with Officer Jefferson's effort to assist in Officer Draine's arrest of Catchings by pulling on the back of Officer Jefferson's neck, requiring Officer Jefferson to strike Jackson with a baton on his lower leg after he refused to leave. Ex.1, 20: 2-11; Ex 2 ,13:17-25.

When Officer Draine arrived at the Club Vibe parking lot, Catchings and Winford were fighting with a black male who was the father of Catchings' child. Ex.2, 12:12-25. Officer Draine called for assistance and Jefferson responded to the call. Ex.2, 13:12; Ex.1,19:4-13. Draine told Catchings and Winford to get inside their vehicles and leave. Ex.2, 17:23-25, 18:1-5. Both refused to do so. *Id.*

Officer Jefferson encountered a man claiming to be the brother of the man in the car fighting with Catchings and Winford. Ex.1, 19:14-18; Ex. 12, *Jefferson Body Camera video footage*, at 0:00:15. Winford is in front of this man shouting at him and waving. *Id.* at 0:00:10. Jefferson tells the man to go to his car and tells him "I got it;" the man agrees to leave. *Id.* at 0:00:10. Winford then moves over to Officer Catchings. *Id.* at 0:00:26. Jefferson tells Winford to "get in your car please." *Id.* at 0:00:30. Winford offers to snatch Catchings out of the car she is in. *Id.* at 0:00:35. Jefferson tells Winford that

Page 2 of 17

"this is the last time" and to let Officer Draine handle the matter. *Id.* at 0:00:45. Jefferson tells Winford to turn around and handcuffs her left wrist. Id. at 0:00:49. Winford becomes combative. *Id.* at 0:00:55. Officer Jefferson commands Winford to "give me your other hand, ma'am." *Id.* at 0:01:09. After struggling with Winford, Jefferson succeeds in handcuffing her right wrist. *Id.* at 0:01:16.

While Officer Jefferson was arresting Winford, Officer Draine was arresting Catchings. *Id.* at 0:00:57. Catchings refused to exit the vehicle that she was in and Officer Draine forcibly removed her. *Id.* at 0:01:10. Once out of the vehicle, Catchings actively resisted being handcuffed by Officer Draine. *Id.* at 1:20. Officer Draine placed Catchings onto the ground on her stomach and tried handcuffing her but she continued to resist. *Id.* at 0:01:35. Officer Jefferson walked to Officer Draine to assist with Catchings' arrest. *Id.* Jefferson tells Draine repeatedly to "put her in cuffs." *Id.* at 0:01:40.

A male (later identified as Fareno Jackson, a clubgoer and the cell phone videographer) began interfering in the Catchings arrest by pulling on Officer Jefferson. *Id.* at 0:01:49. Officer Jefferson ordered Jackson to back up and move away, but he refused. *Id.* at 0:01:54. Officer Jefferson unholstered his ASP baton and struck Jackson on the leg. *Id.* at 0:01:59. Jackson then moved away from the scene. Id. at 0:02:15. Officer Draine and Officer Jefferson then handcuffed Catchings. *Id.* at 0:02:31.

Having already handcuffed Winford, Officer Jefferson then attempted to place Winford in his vehicle. *Id.* at 0:02:31. As Officer Jefferson placed Winford into his vehicle, the Plaintiff came behind him and grabbed his back. Ex.1, 53:21-25; 54:17; Ex.2, 46:19-23. Jefferson, facing the Plaintiff, told the Plaintiff, twice, "You better get back." Ex. 12 at 2:51. The Plaintiff used the N-word when addressing Officer Jefferson. Ex. 12 at 3:20. Officer Jefferson testified that he smelled alcohol on the Plaintiff. Ex.1, 37:2-9.

After securing Winford in his patrol vehicle and commanding the Plaintiff to cease her actions, Officer Jefferson pushed the Plaintiff back and away from him, telling her to "have a good night" and "get on out of here." Ex. 13, Fareno Jackson video footage at 0:00:47; Ex.12 at 0:03:24. Officer Jefferson pushed the Plaintiff with his left open hand, applied to her right shoulder and arm, not her chest. Ex. 13 at 0:00:47. The Plaintiff remained standing.

Due to the Plaintiff's failure to comply with lawful commands and her interference with police duties, Officer Jefferson arrested her. *Id.* at 0:01:22. While attempting to handcuff the Plaintiff, she resisted his attempts at control and handcuffing, pulling away from him and telling him she was not going to jail. *Id.* at 0:01:33.To effectuate the arrest Officer Jefferson brought her to a parallel position on the hood of a car. Ex.13 at 0:01:40; Ex. 12 at 0:04:03. Officer Draine then assisted with the Plaintiff's arrest, telling her twice to put her hands behind her back to handcuff her. Ex. 11, Corporal Gallion's body camera video footage, at 0:02:45. Officer Draine applied a drive stun Taser to the Plaintiff's leg. *Id* at 0:03:00. After Officer Draine's Taser application, Plaintiff stopped resisting arrest and complied with Officer Jefferson's handcuffing procedure. Id at 0:03:10.

### I. Defendants' Rebuttal Regarding Certain Factual Matters Asserted by Plaintiff

The Plaintiff's memorandum contains several factual inaccuracies directly contradicted by body camera footage, cell phone video evidence, and deposition testimony. Defendants submit the following rebuttal to correct these misstatements:

#### a. Alleged Use of ASP Baton against Winford and Alleged Imminent Assault

The Plaintiff incorrectly states that "Ms. Winford was handcuffed on the ground, and Officer Jefferson was poised to strike her with an ASP baton." Memo. p. 1. Officer Jefferson's body cam footage only shows Jefferson holding the ASP baton to his side. Fareno Jackson's video does not start until after Winford is in the patrol car and the door is shut.

Further, Plaintiff incorrectly states that there "appeared to be Officer Jefferson's imminent assault on a handcuffed detainee [ Winford]." Memo., p. 9. Officer Jefferson's bodycam footage does not show that Jefferson was about to strike Winford.

### b. Alleged Violent Shove of Plaintiff

The Plaintiff incorrectly alleges that Officer Jefferson "violently shov[ed] her in the chest and knock[ed] her back several feet." Memo. p. 2. The Fareno Jackson video footage shows Officer Jefferson pushing the Plaintiff with his left open hand, applied to her right shoulder and arm, not her chest. Officer Jefferson's first push does not cause the Plaintiff to fall to the ground and does not push her back several feet. The second push is a light push with Officer Jefferson applying his left hand to the Plaintiff's right shoulder, and the Plaintiff does not step back.

The Plaintiff incorrectly alleges that Officer Jefferson, "[a]fter the initial shove,… shoved her again, this time knocking her out of her shoes." Memo. p. 2. However, the Fareno Jackson video footage does not show Officer Jefferson pushing the Plaintiff out of her shoes. Instead, before Officer Jefferson's initial push, the Plaintiff stepped out of her left shoe, a flat strapless sandal. Then, after Officer Jefferson pushed the Plaintiff, her right sandal was no longer on her foot, suggesting that the Plaintiff could have stepped out of the right sandal the same way she did with the left sandal.

### c. Alleged Use of Force in Placing Plaintiff on Car Hood

The Plaintiff incorrectly states that Officer "Jefferson forcibly slammed Plaintiff on the car." Document 104, p. 5. The Fareno Jackson footage shows Officer Jefferson grabbing the Plaintiff's arm and the Plaintiff then resisting arrest. Officer Jefferson then brings her to the hood of a car. While the Plaintiff is lying on her back on the car hood, Officers Jefferson and Gallion grab each of her arms and then lift her to a standing position. Further, the Plaintiff incorrectly states that she did not "pose any threat to Officer Jefferson when he slammed her on the hood of a car." Document 104, p. 9.

However, all three videos show the Plaintiff physically resisting arrest before she was placed on the car hood.

### d. Alleged Lack of Threat Prior to Jefferson's Push

The Plaintiff incorrectly states that she "posed no threat to Officer Jefferson at the moment he decided to shove her." Document 104, p. 9. This is contradicted by the deposition testimony of Officers Jefferson and Draine that only moments before Jefferson's push, the Plaintiff grabbed Officer Jefferson as he was placing Carmen Winford in his patrol vehicle after Winford's arrest. Ex.1. Dep. 53:21-25; 54:17; Ex.2. Dep. 46:19-23. Moreover, Jefferson warned the Plaintiff to "get on back."

### e. Use of Taser

The Plaintiff incorrectly states that "by the time Officer Jefferson ordered Plaintiff to be Tased, the video shows that she was calm and collected and merely telling the officers to listen to their superior." Document 104, p. 10. However, Jefferson and Gallion's video footage both show the Plaintiff actively resisting arrest before being tased. Jefferson and Gallion are holding the Plaintiff. Draine instructs the Plaintiff to put her hands behind her back before administering the Taser.

### f. Role of Corporal Gallion

The Plaintiff incorrectly states that "while Jefferson and Draine were trying to handcuff her, Cpl. Gallion was trying to stop them." Document 104, p. 12. Jefferson and Gallion's videos do not show Gallion trying to stop the Plaintiff from being handcuffed by the two officers. Notably, Gallion provided Jefferson her handcuffs and then held the Plaintiff's arm while she and Jefferson lifted the Plaintiff from the car hood.

### g. Incompetence of Sergeant Jackson and Commander Wells' Memoranda

Sergeant Rickey Jackson's memorandum issued the day after the incident, and tendered by the Plaintiff in his response to the Motion for Summary Judgement, is not competent summary judgment evidence of Plaintiff's excessive use of force claim. See Plaintiff's Response Memorandum, p.12.

Sergeant Jackson admitted in his memorandum that he had not reviewed Jefferson's or Gallion's body camera footage; instead, his concern focused on Jefferson ignoring Gallion's request to disengage. Likewise, Commander Wells stated that he had not reviewed body camera footage and provided no factual basis for concluding that Jefferson's use of force was excessive. Further, neither memorandum is in the form of an affidavit or deposition testimony. Even if they were, they would constitute inadmissible lay opinions, as they are not based on personal knowledge.

### h. Admissibility of Mark Dunston's Expert Report

The Plaintiff objected to the Mark Dunston's expert report, Ex. 28, stating that it is not competent summary judgment evidence. See Plaintiff's Response Memorandum, p.12, footnote 38. However, unsworn expert reports may be considered as competent summary judgment evidence if opinions expressed in them can be presented in admissible form at trial. *Matter of Chem Carriers Towing, LLC*, 604 F.Supp.3d 380, 387-8 (E.D. La. 2022); *REC Marine Logistics, LLC v. Richard*, 470 F. Supp. 3d 606, 612 (E.D. La. 2020). Dunston's report is properly considered here because it may be admissible pending a proper evidentiary foundation at trial through his testimony.

For the foregoing reasons, Plaintiff's misstatements and mischaracterizations should be disregarded in evaluating Defendants' Motion for Summary Judgment.

### Summary of the Rebuttal Argument

There are no genuine issues of fact to support any of the Plaintiff's civil rights claims under 42 U.S.C. § 1983. Officer Jefferson's use of force in arresting the Plaintiff was not excessive and was objectively unreasonable under the circumstances. Officer Jefferson had probable cause to arrest the Plaintiff for any crime, including the following: (i) resisting arrest, (ii) disorderly conduct by interfering with and disobeying a police officer, or (iii) assault on a police officer. Officer Quadarius Draine, who assisted Officer Jefferson in making the Plaintiff's arrest, did not use excessive force in applying a

drive stun Taser device to the Plaintiff to cause her to comply when she was physically fighting her arrest.

The Plaintiff has not provided a scintilla of competent evidence to support the Plaintiff's first *Monell* claim against the City, alleging that the City failed to train its police officers, including Officer Jefferson, on the proper use of force and that any such insufficient training was the cause of Officer Jefferson allegedly applying excessive force to the Plaintiff. Likewise, the Plaintiff has not provided any competent summary judgment evidence to support the Plaintiff's second *Monell* claim against the City, alleging that there is an unofficial policy of the Police Department that requires the mandatory arrest of a civilian any time an officer uses force and the Plaintiff's arrest was caused by this unofficial policy.

## I. The Court may determine the facts based on audio-video footage of the arrest.

The Court does not have to rely on eyewitness accounts to understand the circumstances surrounding the Plaintiff's arrest. This is because the parties have submitted as exhibits three separate audio-video recordings. The Defendants respectfully request that the Court review the following recordings: the first four (4) minutes of the recording from Officer Tanisha Gallion's body-worn camera (*See* Ex. 11); the first four (4) minutes and thirty (30) seconds of Officer Jeremy Jefferson's body-worn camera recording (*See* Ex. 12); and the entire three (3) minutes of the recording from the cellular telephone of Fareno Jackson. (*See* Ex. 13). The parties agree that the Court should afford great weight to the aforesaid video footage when considering the Defendants' Motion for Summary Judgment. *Carnaby v. City of Houston*, 636 F.3d 183, 187 (5th Cir. 2011) ("We assign greater weight, even at the summary judgment stage, to the facts evident from video recordings taken at the scene."); *Collier v. Montgomery*, 569 F.3d 214, 216, 219 (5th Cir. 2009) ("The video evidence shows that [the plaintiff] physically resisted when [the defendant] attempted to place handcuffs on him.").

The video footage depicts the noisy, chaotic environment in the Vibe parking lot after the club closed at 2:00 a.m., and includes Catchings and Winford vocally and physically resisting their arrests, and Fareno Jackson physically interfering with Winford's arrest, with Officer Jefferson having to strike Jackson with a baton to get him off of him. The Video footage clearly shows the Plaintiff interfering with Officer Jefferson's arrest of Winford despite Jefferson telling her twice that she "better get back." The video footage further shows the Plaintiff physically resisting her arrest, yelling that she was not going to jail. The video footage shows the Plaintiff resisting arrest when Jefferson placed her on the car hood and Officer Draine tased her.

## II. Excessive Use of Force

Plaintiff cannot prevail on her excessive use of force claim against the Defendants. To prevail on an excessive-force claim, the plaintiff must show (1) an injury, (2) that resulted directly from an officer's use of force, and (3) that the force used was "objectively unreasonable." *Flores v. City of Palacios*, 381 F.3d 391, 396 (5th Cir. 2004). "The injury must be more than a de minimis injury and must be evaluated in the context in which the force was deployed." *Glenn v. City of Tyler*, 242 F.3d 307, 314 (5th Cir. 2001).In this case, it is undisputed that Plaintiff suffered a minor injury, a bleeding fingernail and a scraped foot for which she was treated at UMMC by a nurse practitioner. See Plaintiff's Deposition, Ex. A, 69:18 through 70:15.  The injuries the Plaintiff sustained did not result directly from either Officer Jefferson's or Officer Draine's use of force, but were caused by her physically resisting arrest. Clearly, both Officer Jefferson's and Officer Draine's use of force was reasonable under the circumstances. Thus, for purposes of this rebuttal memorandum, we will focus on the second and third elements in our analysis of Plaintiff's claim. *See Goode v. Baggett*, 811 F. App'x 227, 232 (5th Cir. 2020) (restricting analysis to the second two elements of an excessive force claim when the first element was uncontested).

### a. Jefferson's push was not an excessive use of force.

Officer Jefferson did not excessively use force when he "pushed" Plaintiff. The injuries she sustained are not consistent with a push; therefore, she cannot satisfy the second prong of the excessive use of force test. "Not every push or shove ... violates the Fourth Amendment." *Graham v. Connor*, 490 U.S. 386, 396 (1989).  Jefferson's "push" is depicted on his bodycam and the Fareno Jackson video.  Jefferson did not push the Plaintiff to the ground. Jefferson did not push the Plaintiff out of her shoes.  Jefferson applied his left open hand or palm to the Plaintiff's right shoulder. The Plaintiff, smelling of alcohol, was interfering with police duties as Officer Jefferson was trying to put a combative Winford in his patrol car. The Plaintiff had already called Jefferson the N-word and had grabbed him when he was trying to get Winford into the backseat. The Vibe parking lot was loud and boisterous. Moments before, Catchings and Winford had physically resisted their arrests and Fareno Jackson had grabbed Jefferson.  The scene was chaotic at best.

Jefferson's push or shove, or "check," is an established law enforcement technique, used to create distance between the officer and a civilian, especially where there is apprehension that the person might assault the officer. The push typically does not cause physical harm. This is a technique that law enforcement officers are commonly instructed to use according to the City of Jackson's police expert Mark Dunston and the City's use of force instructor Jeremy Jefferson. Ex. 28, p.3.  For these reasons, the Plaintiff cannot prevail on her excessive use of force claim and summary judgment should be granted in favor of the City Defendants.

### b. The Plaintiff being placed on the hood of the car was not an excessive use of force.

Officer Jefferson placed Plaintiff on the hood of a car to gain compliance because she was actively resisting a lawful arrest. The Plaintiff concedes she was resisting arrest. Document 104, p.11. Officer Jefferson's and Corporal Gallion's body-worn camera footage as well as Fareno Jackson's video depict the Plaintiff physically resisting arrest and the Plaintiff telling Officer Jefferson that she

was not going to jail. Officer Jefferson merely placed the Plaintiff on a car hood. She did not express pain during or immediately afterward. Both Jefferson and Gallion lifted the Plaintiff up from the car hood, and she stood up without assistance. Police expert Mark Dunston explains that when a person resists arrest the officer "should take the person to the ground or another horizontal area, such as a vehicle hood or trunk, to place the arrestee off-balance for better control." Ex.28, p.6. This is exactly what happened here. Further, the minor injuries she sustained are inconsistent with her claim that she was placed on the hood of the car with excessive force. Under these circumstances, Officer Jefferson's use of force was objectively reasonable and summary judgment should be granted in favor of the Defendants accordingly.

### c. The Taser application was not excessive use of force

Officers Jefferson and Gallion's video footage show the Plaintiff still physically resisting arrest after she was no longer on the car hood and the two officers were trying to get her to comply with arrest. Officer Draine instructed the Plaintiff to put her hands behind her back so that she could be handcuffed. The video footage shows the Plaintiff continuing to resist arrest. Officer Draine testified, without opposing evidence from the Plaintiff, that he applied the Taser to the Plaintiff in drive stun mode. On the audio portion of the videos, one hears three intermittent taser transmissions. "Drive-stunning" refers to the act of pressing a taser directly against a person's body without the taser's cartridge containing the metal probes. *Carroll v. Ellington*, 800 F.3d 154, 164 (5th Cir. 2015). This method of tasing "inflicts a painful electric shock on contact, but does not cause the same seizing" or immobilizing effect as deploying a taser with prongs." *Cloud v. Stone*, 993 F.3d 379, 382 n.2 (5th Cir. 2021) (Deputy sheriff's use of nonlethal force, consisting of first using a stun gun against arrestee from a few feet away, then using his stun gun in drive-stun mode while grappling with the arrestee, did not amount to use of excessive force). In *Sheffey v. City of Covington*, the Sixth Circuit held that a police officer acted reasonably and did not use excessive force in using his stun gun in drive-stun mode on

an arrestee a total of four times after his fellow officers took the arrestee to the ground and as they struggled to subdue him. 564 Fed.Appx. 783, 796 (6th Cir.2014). Likewise, the Sixth Circuit held that a police officer's single use of an electrical stun-gun in drive-stun mode, by applying it to the left side of the back of an arrestee so he could be handcuffed and taken to hospital for a mental health evaluation, was not excessive force in violation of Fourth Amendment. 485 F. App'x 92, 97 (6th Cir. 2012). Also see *Law v. City of Post Falls*, 772 F. Supp. 2d 1283 (D. Id. 2011) (Court determined that even if plaintiff was entirely compliant, use of Taser in drive-stun move would not be excessive force).

### III. Unlawful Arrest Claim

Plaintiff argues that Officer Jefferson lacked probable cause to arrest her, but this assertion is contrary to well-established legal precedent. "Probable cause" for arrest exists when the totality of facts and circumstances within police officer's knowledge at moment of arrest are sufficient for reasonable person to conclude that suspect had committed or was committing an offense. *See U.S. v. McCowan*, 469 F.3d 386, 390 (5th Cir. 2006). **Under controlling Fifth Circuit authority, an officer's probable cause to arrest need not be tied to a specific offense initially contemplated but is instead sufficient so long as probable cause exists for any crime.** *See Defrates v. Podany*, 789 F. App'x 427, 431 (5th Cir. 2019) (holding that "probable cause can be for any crime, not just the one the officer subjectively considered at the time").

#### a. Officer Jefferson had probable cause to arrest the Plaintiff

The totality of the circumstances provided Officer Jefferson with ample probable cause to arrest her. Deposition testimony establishes that the Plaintiff physically grabbed Officer Jefferson while he was placing Winford inside the patrol vehicle; that Plaintiff repeatedly ignored lawful commands to step back and disengage; that the Plaintiff actively resisted her arrest by pulling away as Officer Jefferson attempted to handcuff her; and that Plaintiff continued to resist and interfere with police duties, even after verbal warnings and an initial push to create space. Plaintiff's conduct

independently justified an arrest for several crimes, including but not limited to, disorderly conduct, resisting arrest, and assault on a police officer.

The Plaintiff incorrectly attaches significance to her claim that Officer Jefferson "did not state his reason for arresting her." D104, p. 4. However, the only issue is whether there was probable cause, not Officer Jefferson's alleged failure to advise her the reason for her arrest. *See Rudd v. Graves*, 22 Fed.Appx. 954, 956 (10th Cir. 2001) (explaining that the Fourth Amendment "does not require officers to tell a suspect the grounds for [her] arrest or even to expressly state that [she] is under arrest; rather, it requires that officers have probable cause before making an arrest") (citing *Dunaway v. New York*, 442 U.S. 200, 212–13 (1979)).

### b. First Amendment Retaliatory Arrest

Plaintiff contends that she "exercised her First Amendment right to criticize and challenge Jefferson's use of excessive force against a helpless civilian in handcuffs." Plaintiff's Memorandum, p.16. She further argues that "Jefferson retaliated against … [her] by assaulting her." *Id.* at p. 17. However, Plaintiff failed to cite any competent summary judgment evidence to support her argument. Her mere allegations at this stage are insufficient to overcome summary judgment. The record evidence is clear that Plaintiff was acting belligerent, disorderly and disruptive while Officer Jefferson was attempting to arrest Winford. *See Shepherd on behalf of Est. of Shepherd v. City of Shreveport*, 920 F.3d 278, 283 (5th Cir. 2019) ("when there is a videotape that discredits the non-movant's description of facts, we will consider the facts in the light depicted by the videotape"). For the reasons stated above, Officer Jefferson had sufficient probable cause to arrest Plaintiff. Thus, Plaintiff cannot prevail on her First Amendment retaliatory arrest claim. Accordingly, this Court should grant summary judgment in favor of Defendants.

### IV. Officers Jefferson and Draine are entitled to Qualified Immunity

Plaintiff argues that the Defendants are not entitled to qualified immunity because their actions violated Plaintiff's First and Fourth Amendment rights, and those rights were clearly established at the time of the officer's conduct. For the all reasons stated above, Officers Jefferson and Draine are entitled to qualified immunity because their use of force was not clearly excessive or objectively unreasonable under the circumstances.

Qualified immunity protects officers from liability unless they violate a clearly established constitutional right that a reasonable officer would know. To overcome this defense in an excessive force claim, a plaintiff must show that they suffered a physical injury caused by force that was clearly excessive and objectively unreasonable. Courts assess reasonableness by considering factors such as the severity of the crime, whether the suspect posed a threat, and whether the suspect was resisting or attempting to flee.

Officer Jefferson's use of force was justified because the Plaintiff was actively resisting arrest by yelling, grabbing his back, and refusing to comply. In response, he used a trained law enforcement technique—a two-handed push—to create distance, followed by placing the Plaintiff on the hood of a car to gain control. Expert testimony confirms that these actions align with standard law enforcement training and do not constitute excessive force. Similarly, Officer Draine's use of a TASER drive stun was a measured response to the Plaintiff's continued resistance. The drive stun method, designed for pain compliance rather than incapacitation, was applied only until the Plaintiff ceased resisting and complied with the officers' commands.

Because the officers' actions were consistent with established police training and necessary to manage an uncooperative suspect, their conduct does not meet the legal threshold for excessive force. The plaintiff has not provided evidence showing that the force used was objectively unreasonable. Therefore, the officers are entitled to qualified immunity, and the court should grant summary judgment in their favor.

V.   **Liability against the City of Jackson**

To hold a municipality liable under 42 U.S.C. § 1983 the Plaintiff must show that "(1) an official policy (2) promulgated by the municipal policymaker (3) was the moving force behind the violation of a constitutional right." *Verastique v. City of Dallas*, 106 F.4th 427, 432 (5th Cir. 2024) (cleaned up). "An unofficial policy or custom, such as the decisions of a government's law-makers, the acts of its policymaking officials, and practices, can suffice for purposes of showing the existence of an "official policy—but only if it is so persistent and widespread as to practically have the force of law."*Id.* To establish the existence of a custom or unofficial policy, a plaintiff must allege that the unconstitutional conduct occurred in cases other than his own or, in rare circumstances, that a final policymaker took a single unconstitutional action. *Muslow v. Cty. of Shreveport*, 491 F. Supp. 3d 172, 189 (W.D. La. 2020), citing *Zarnow v. City of Wichita Falls, Tex.*, 614 F.3d 161, 169 (5th Cir. 2010) "A customary municipal policy cannot ordinarily be inferred from single constitutional violations." *Piotrowski v. City of Hous.*, 237 F.3d 567, 581 (5th Cir. 2001).

   a.   **Monell liability— Alleged Failure to Train**

The Plaintiff generally alleges that the City's failure to provide continuing use-of-force training to its police officers shows deliberate indifference. The Plaintiff appears to specifically allege that Officer Jefferson's actions violated the Department's use of force policy and had there been ongoing training it would have prevented Officer Jefferson's alleged use of force.

Failure to train may represent a policy for which the City may be held liable under 42 U.S.C. § 1983 only if it directly causes injury. *City of Canton v. Harris*, 489 U.S. 378, 390, 109 S.Ct. 1197, 103 L.Ed.2d 412 (1989). The fact that an officer could be "unsatisfactorily trained" is not enough to trigger the municipality's liability. *Id.* at 390–91, 109 S.Ct. 1197. The plaintiff must show that (1) the training policy was deficient, (2) the City was deliberately indifferent to this deficiency in adopting the policy, and (3) the deficient training policy was the "moving force" of, i.e., directly caused the constitutional

violation. *Shumpert v. City of Tupelo*, 905 F.3d 310, 317 (5th Cir. 2018). In this context, to sufficiently demonstrate that there was deliberate indifference, the plaintiff has to show that the municipality had actual or constructive notice of a pattern of similar constitutional violations caused by the policy. See *Connick v. Thompson*, 563 U.S. 51, 61–62 (2011). Moreover, "[a] municipality's culpability for a deprivation of rights is at its most tenuous where a claim turns on a failure to train." *Id.*

The Plaintiff has failed to put forward any competent facts that Jackson police officers are not trained on the appropriate use of force in making arrests. Use of force guidelines for the Police Department are set forth in General Order 600-10. Ex. 6. Officer Jefferson testified in his deposition that he was familiar with General Order 600-10. The Plaintiff has produced no evidence that either Officer Jefferson or Officer Draine was not trained on the Department's use of force policy.

Precinct Commander Obie Wells testified in his deposition that Officer Jefferson would have received training on the use of force at the Police Academy. Commander Wells confirmed that supervisors assigned to his precinct are trained to go over General Orders of the Department as they may be applicable. Moreover, the Plaintiff has not provided any specific, competent facts to support her claim that continuing training on the proper use of force would have affected Officer Jefferson's actions regarding the Plaintiff's arrest.

### b. Monell Liability—Alleged Unconstitutional Custom of Mandatory Arrest After Use of Force

The Plaintiff asserts that Officer Jefferson made statements at the scene of the arrest that were to the effect that because he touched the Plaintiff, he had to arrest her. The Plaintiff seems to state that Officer Jefferson's statements are an expression of an unofficial policy of the Police Department that requires the mandatory arrest of a civilian any time an officer uses force.

The Plaintiff has presented no competent facts showing that this purported mandatory arrest policy of the Police Department is persistent and widespread. The Plaintiff cannot use the example of her arrest by Officer Jefferson as summary judgment evidence on this issue.

### c. Plaintiff's § 1983 claim against former Chief Davis must fail as a matter of law.

Plaintiff failed to address any of the arguments contained in City Defendants' Memorandum Brief in support of their Motion for Summary Judgment regarding her § 1983 claim against Chief Davis. See Document 104. Therefore, Defendants reassert their arguments and the same should be considered unopposed since Plaintiff failed to address the same.

### Conclusion

Defendants Officer Jeremy Jefferson, Officer Quadarius Draine, Former Chief of Police James Davis, and the City of Jackson, Mississippi respectfully request that this Court enter an order granting summary judgment in their favor, thereby dismissing the Plaintiff's claims with prejudice, and granting any other relief this Court deems proper.

RESPECTFULLY submitted, this the 19th day of February, 2025.

**CITY OF JACKSON, MISSISSIPPI**

By: */s/ Samuel L. Begley*
Samuel L. Begley, MSB #2315
Legal Counsel sbegley@jacksonms.gov

**OFFICE OF THE CITY ATTORNEY**
455 East Capitol Street
Post Office Box 2779
Jackson, Mississippi 39207-2779
601-960-1799 (office)
601-960-1756 (facsimile)